Paul JOHNSON, Jr., Appellant,

v.

Robert A. McDONALD, Secretary of Veterans Affairs, Appellee.

No. 14–2778.

United States Court of Appeals for Veterans Claims.

Argued Nov. 17, 2015.

Decided March 1, 2016.

Patrick A. Berkshire, with whom Barton F. Stichman was on the brief, both of Washington, D.C., for the appellant.

Daenia L. Peart, with whom Leigh A. Bradley, General Counsel; Mary Ann Flynn, Assistant General Counsel; and Kenneth A. Walsh, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before HAGEL, Chief Judge, and KASOLD and GREENBERG, Judges.

HAGEL, Chief Judge:

Veteran Paul Johnson, Jr., appeals through counsel an April 28, 2014, Board of Veterans' Appeals (Board) decision that denied him entitlement to an increased disability rating for a skin condition. Mr. Johnson argues that the Board erred when it determined that topical corticosteroids are not "systemic" therapies pursuant to 38 C.F.R. § 4.118, Diagnostic

Code 7806 (dermatitis or eczema), and that the Board provided inadequate reasons and bases for its determination that Mr. Johnson was not entitled to a disability rating for scarring. The Secretary argues that Mr. Johnson's topical use of a corticosteroid cream did not constitute a "systemic" therapy under Diagnostic Code 7806 and that the Board gave an adequate statement of reasons and bases for concluding that Mr. Johnson's service-connected skin condition did not result in scarring. A panel was convened to determine whether Mr. Johnson's use of a topical corticosteroid constitutes "systemic therapy" pursuant to Diagnostic Code 7806. *See Frankel v. Derwinski*, 1 Vet. App. 23, 25–26 (1990); Court's Internal Operating Procedures, sec. III(a)(4) (establishing panel criteria). The panel concludes that the plain wording of Diagnostic Code 7806 is that systemic therapy, as used therein, includes the use of corticosteroids without any limitation to such use being oral or parenteral as opposed to topical. Accordingly, because topical corticosteroids are included within the plain meaning of "corticosteroid," the decision on appeal will be affirmed in part, and reversed and remanded in part.

## I. BACKGROUND

Veteran Paul Johnson, Jr., served honorably in the U.S. Army from April 6, 1970, until December 3, 1971, and saw combat in Vietnam. While on active duty, Mr. Johnson began to suffer from a rash. In April 2008, Mr. Johnson received a 10% disability rating for his skin condition. In the decision on appeal, the Board denied Mr. Johnson entitlement to a disability rating in excess of 10% for his skin condition, because (1) the condition affects less than 20% of exposed areas of his body, and (2) Mr. Johnson had not used systemic therapy for a duration of 6 weeks or more during any 12 month period. The Board

also concluded that a separate rating under 38 C.F.R. § 4.118, Diagnostic Codes 7801–7805 was not appropriate because Mr. Johnson's scarring was not related to his skin condition.

## II. THE PARTIES' ARGUMENTS

### A. Skin Condition

Relying on *Jones v. Shinseki*, 26 Vet. App. 56, 61 (2012) (noting that VA regulations are construed in accordance with their plain meaning), Mr. Johnson argues that the plain meaning of Diagnostic Code 7806 entitles him to a 60% disability rating. He notes that Diagnostic Code 7806 specifically provides a 60% disability rating for "constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs required during the past 12–month period." 38 C.F.R. § 4.118, Diagnostic Code 7806 (2015). Relying on *Mauerhan v. Principi*, 16 Vet. App. 436, 442 (2002) (explaining that the phrase "such as" means that a non-exhaustive list follows), Mr. Johnson contends that the plain meaning of the phrase "systemic therapy such as corticosteroids" is that treatments with corticosteroids are systemic therapies. Mr. Johnson further notes that at his November 5, 2013, VA compensation and pension (C & P) examination, the examiner reported that Mr. Johnson had used topical corticosteroids (triamcinolone cream) constantly for a period of 12 months. Thus, Mr. Johnson contends that the Board erred in finding that his topical use of corticosteroids is not a systemic therapy because this finding contradicts the plain meaning of Diagnostic Code 7806.

At oral argument, Mr. Johnson also concurred with general discussion that the Secretary knew how to limit the definition of "systemic" use of corticosteroids to only include certain methods of application be-

cause he did so in Diagnostic Code 6602. *See* 38 C.F.R. § 4.97, Diagnostic Code 6602 (2015) (providing a 100% disability rating for bronchial asthma that "requires daily use of systemic (oral or parenteral) high dose corticosteroids or immuno-suppressive medications").

The Secretary argues that the phrase "systemic therapy" in Diagnostic Code 7806 does not include the topical application of corticosteroids. He notes that *Dorland's Illustrated Medical Dictionary* defines systemic as "pertaining to or affecting the body as a whole," whereas it defines topical as "pertaining to a particular surface area, as a topical antiinfective applied to a certain area of the skin and affecting only the area to which it is applied." Dorland's Illustrated Medical Dictionary 1865 and 1940 (32d ed. 2012). The Secretary also cites to other sources defining "systemic." *See* http://www.cancer.gov/COMMON/PopUPS/pop Definition.aspx?id=45922 (defining systemic therapy as "[t]reatment using substances that travel through the bloodstream, reaching and affecting cells all over the body."); Merriam-Webster's Collegiate Dictionary 1270 (11th ed., 2003) (defining systemic as "affecting the body generally").

The Secretary also notes that a 0% disability rating is warranted under Diagnostic Code 7806 when "[l]ess than 5 percent of the entire body or less than 5 percent of exposed areas affected, and; no more than topical therapy required during the past 12–month period." 38 C.F.R. § 4.118, Diagnostic Code 7806. He contends that this reflects the Secretary's distinction between systemic and topical. Relying on *Corley v. United States,* 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) (" '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignif-

icant ....,' " quoting *Hibbs v. Winn,* 542 U.S. 88, 101, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004) (alterations in *Corley* )), the Secretary further contends that if systemic therapies included topical it would render the 0% provision in Diagnostic Code 7806 superfluous, in violation of the rules of statutory construction. *See Black v. West,* 11 Vet.App. 15, 17 (1998) (rules of statutory construction apply to construction of regulatory provisions (citing *Smith v. Brown,* 35 F.3d 1516, 1523 (Fed.Cir. 1994))).

In advance of oral argument, the Secretary filed with the Court supplemental authorities. The Secretary notes that Diagnostic Code 6602 provides entitlement to a 100% rating for bronchial asthma when treatment "requires daily use of systemic (oral or parenteral) high dose corticosteroids or immuno-suppressive medications." 38 C.F.R. § 4.97, Diagnostic Code 6602. He contends that this limitation of "systemic" should also apply in DC 7806. To this end, the Secretary also notes that in October 2015, as this case was pending, he adopted an M–21 manual provision distinguishing between "systemic" and "topical" therapies for skin conditions. The newly adopted provision reads as follows:

> The term "systemic therapy such as corticosteroids or other immunosuppressive drugs," that is contained in certain DCs under 38 CFR 4.118, refers to any oral or parenteral medication(s) prescribed by a medical professional to treat the underlying skin disorder. Medications that are applied topically (directly to the skin), including topical corticosteroids or immunosuppressives, are not considered systemic for VA purposes.

VA Adjudications Procedures Manual (M21–1 MR), pt. III, subpt. iv, ch. 4, § J.3.f.

## B. Scarring Claim

Mr. Johnson argues that the Board provided inadequate reasons and bases for its decision and failed to address favorable evidence indicating that his service-connected skin condition causes scarring and thus warrants a separate disability rating under 38 C.F.R. § 4.118 Diagnostic Code 7801–05. Mr. Johnson contends that the favorable evidence of scarring is found in both his November 2013 C & P examination report that mentioned abrasions and his November 2010 C & P examination that mentioned the presence of a scar on his buttocks.

The Secretary argues that the Board (1) addressed the evidence of record concerning whether Mr. Johnson's service-connected skin condition resulted in scarring, and (2) provided an adequate statement of reasons and bases for concluding that it did not. The Secretary notes that the Board found that Mr. Johnson's disability involved hyperpigmentation, pruitis, and dryness, but not scarring. The Secretary also notes that, although mild abrasions were observed on Mr. Johnson's November 2013 C & P examination report, the examiner did not find scarring. Moreover, the Secretary contends that the scar noted on Mr. Johnson's buttocks in his November 2010 VA C & P examination was, by his own report, from a previous cyst, and is thus distinct from his present skin condition.

## III. ANALYSIS

### A. Interpretation of Diagnostic Code 7806

 Interpretation of a regulation's meaning is a question of law that the Court reviews de novo. *Lane v. Principi,* 339 F.3d 1331, 1339 (Fed.Cir.2003). "Regulatory interpretation begins with the plain meaning of the words used." *Hudgens v.*

*Gibson,* 26 Vet.App. 558, 561 (2014) (citing *Brown v. Gardner,* 513 U.S. 115, 120, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994)). The canons of statutory construction apply with similar force to agency regulations and require interpretation of words in their context with an eye to the law as a whole. *See King v. St. Vincent's Hosp.,* 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (holding that, when interpreting a statute or regulation, courts must read the provisions of the law as a whole and in context); *Imazio Nursery, Inc. v. Dania Greenhouses,* 69 F.3d 1560, 1564 (Fed.Cir. 1995) (holding that all parts of a statute must be construed together without according undue importance to a single or isolated portion); *Meeks v. West,* 12 Vet. App. 352, 354 (1999) ("[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole." (quoting 2A N. SINGER SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed. 1992)) (second alteration in original)), *aff'd,* 216 F.3d 1363 (Fed.Cir. 2000); *Black,* 11 Vet.App. at 17.

 The Secretary's interpretation of his own regulation is entitled to substantial deference unless that interpretation is inconsistent with the language of the regulation itself or is otherwise plainly erroneous. *Auer v. Robbins,* 519 U.S. 452, 461–62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); *Smith v. Nicholson,* 451 F.3d 1344, 1349–50 (Fed.Cir.2006); *Cathedral Candle Co. v. U.S. Int'l Trade Comm'n,* 400 F.3d 1352, 1363–64 (Fed.Cir.2005). Moreover, this "[d]eference to an agency's interpretation of its own regulation 'is warranted only when the language of the regulation is ambiguous.'" *Johnson v. McDonald,* 762 F.3d 1362, 1364 (Fed.Cir.2014) (quoting *Christensen v. Harris Cnty.,* 529 U.S. 576,

502

588, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000); *Bowles*, 325 U.S. at 414, 65 S.Ct. 1215). Thus, when the plain language of the regulation is unambiguous, and the agency's interpretation is either plainly erroneous or inconsistent with the regulation itself, the agency's interpretation is not entitled to deference. *See id.* at 1366 (citing *Christensen*, 529 U.S. at 588, 120 S.Ct. 1655).

We begin our analysis with the language of Diagnostic Code 7806 (Dermatitis or eczema) which provides:

More than 40 percent of the entire body or more than 40 percent of exposed areas affected, or; constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs required during the past 12–month period......60[%]

20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more, but not constantly, during the past 12–month period......................30[%]

At least 5 percent, but less than 20 percent, of the entire body, or at least 5 percent, but less than 20 percent, of exposed areas affected, or; intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of less than six weeks during the past 12–month period..............10[%]

Less than 5 percent of the entire body or less than 5 percent of exposed areas affected, and; no more than topical therapy required during the past 12–month period ... 0[%]

*Or rate as disfigurement of the head, face, or neck (DC 7800) or scars (DC's 7801, 7802, 7803, 7804, or 7805), depending upon the predominant disability.*

38 C.F.R. § 4.118, DC 7806.

 Here, the language of Diagnostic Code 7806 is unambiguous: the diagnostic code explicitly mentions corticosteroids as an example of "systemic therapy" and does not further distinguish between different types of corticosteroid application. Otherwise stated, as used in Diagnostic Code 7806, "constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs [ ] required during the past 12–month period," defines systemic therapy as the use of corticosteroids without any limitation of type of use, and it is well settled that the Board is not permitted to add criteria not included in the rating schedule. *See Drosky v. Brown*, 10 Vet.App. 251, 255 (1997) (holding that the Board's imposition of additional requirements "other than those specified" in the diagnostic code was impermissible); *Pernorio v. Derwinski*, 2 Vet.App. 625, 628 (1992) (stating that "[i]n using a standard that exceeded that found in the regulation, the Board committed legal error."); *see also Theiss v. Principi*, 18 Vet.App. 204, 208 (2004), as amended (Aug. 26, 2004) ("If, as here, the statute fails to define an operative term, that may leave a 'gap' in the statute, and the Secretary may undertake to fill that gap, but may not add requirements or limitations to those set forth in the statute." (citing *Ozer v. Principi*, 14 Vet.App. 257, 264 (2001); *Davenport v. Brown*, 7 Vet.App. 476, 482 (1995))); *Black*, 11 Vet.App. at 17.

Although the Secretary cites to *Dorland's* and various other dictionaries for the proposition that a topical application is not a systemic treatment, the definitions are not so exact. Systemic, for example, is not defined as excluding topical treatment nor is topical defined as something other than systemic. Moreover, neither definition specifically addresses the use of a corticosteroid. Succinctly stated, the Sec-

retary's reliance on *Dorland's* does not demonstrate the proposition that "systemic treatment" categorically, or even in common parlance, excludes topical treatment. *See Jones v. Shinseki,* 26 Vet.App. 56, 64 (2012) (noting that this Court should not take judicial notice of medical dictionary evidence when definitions may support opposing arguments and thus create a reasonable factual dispute); *cf. Nielson v. Shinseki,* 23 Vet.App. 56, 59 (2009) ("It is commonplace to consult dictionaries to ascertain a term's ordinary meaning." (citing *United States v. Rodgers,* 466 U.S. 475, 479, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984); *McGee v. Peake,* 511 F.3d 1352, 1356 (Fed. Cir.2008); *Telecare Corp. v. Leavitt,* 409 F.3d 1345, 1353 (Fed.Cir.2005))) *aff'd,* 607 F.3d 802 (Fed.Cir.2010).

Indeed, at oral argument Mr. Johnson provided a perfect example of a so-called "topical" therapy with a systemic effect— use of a smoking cessation patch. Oral Argument at 11:03–25 *Johnson v. Mc-Donald,* U.S. Vet.App. No. 14–2778 (argued November 17, 2015) http://www. uscourts.cavc.gov/oral_arguments_audio. php; *see generally,* What is a Nicotine Patch?, https://www.nicodermcq.com/what-is-a-nicotine-patch.html ("While you wear the patch, nicotine passes through the skin into your blood. This delivers nicotine in a steady stream . . . ."). Succinctly stated, the *Dorland's* and other definitions cited by the Secretary do not forestall the Secretary from defining systemic therapy for a skin condition as including the use of a topical corticosteroid, which is exactly what he did in Diagnostic Code 7806.

Contrary to the Secretary's contention that his reference to Diagnostic Code 6602 and the recent M21–1 definition of systemic therapy for Diagnostic Code 7806 are supportive of an interpretation that Diagnostic Code 7806 excludes topical use of corticosteroids from systemic therapy,

these references do the opposite. The wording in Diagnostic Code 6602 shows that the Secretary knew how to define "systemic" in a limited way when that was his intent, and he did not provide such a limitation with regard to Diagnostic Code 7806. *See Hudgens,* 26 Vet.App. at 561–62 (citing *Jones,* 26 Vet.App. at 62); *see also Heino v. Shinseki,* 683 F.3d 1372, 1379 (Fed.Cir.2012) ("It is well settled that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purportedly in the disparate inclusion or exclusion.' " (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17(1983))); *Black,* 11 Vet.App. at 17.

■ The M21–1 modification similarly reflects the Secretary's ability to define "systemic" in a limited way when he wants to do so, but such a modification cannot serve to retroactively modify the plain meaning of a regulation. *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."). Indeed, a change in the M21–1 has no effect on the plain meaning of a regulation, which can only be modified after VA fulfills the notice and comment requirements of 5 U.S.C. § 553. *See Theiss,* 18 Vet.App. at 213 (holding that "substantive changes made by administrative agencies in regulations are required to comply with certain 'notice and comment' requirements," which include "publication of a notice of proposed rulemaking in the Federal Register; an opportunity for interested persons to comment on that notice; and, after consideration of these comments, publication of the

final rule with a general statement of its basis and purpose" (citing 5 U.S.C. § 553(b), (c))); *see Smith v. Shinseki*, 647 F.3d 1380, 1385 (Fed.Cir.2011) ("VA interpretations of its own regulations in its Adjudication Procedures Manual are 'controlling' as long as they are not 'plainly erroneous or inconsistent with the regulation.'" (quoting *Thun v. Shinseki*, 572 F.3d 1366, 1369 (Fed.Cir.2009))); *accord Castellano v. Shinseki*, 25 Vet.App. 146, 151 (2011) ("[A] properly promulgated regulation trumps an M21–1 provision or other VA directive that plainly is erroneous or inconsistent with regulation.").

The Secretary also is unpersuasive in his contention that if "systemic" included topical it would render the 0% rating criteria in Diagnostic Code 7806 superfluous. The Secretary fails to appreciate, however, that the criteria for a 0% rating does not address corticosteroids and only addresses the treatment for skin disorders that cover less than 5% of the body or less than 5% of the exposed areas affected. Thus, a veteran with less than 5% of the body affected or less than 5% of the exposed areas affected who requires topical, non-corticosteroid treatment would be awarded a 0% disability rating, while a veteran with the same affected area but whose treatment included corticosteroids for less than six weeks over the past year would be awarded a 10% disability rating. Succinctly stated, we do not find the 0% rating criteria to be superfluous; rather, it serves to recognize a skin condition as a disability for VA purposes, albeit with a 0% rating, when the veteran is not undergoing corticosteroid treatment.

To the extent that the Secretary suggests Diagnostic Code 7806 is in artfully drafted and invites us to re draft it, we decline to do so as beyond our province. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 542, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. 'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result.'" (quoting *United States v. Granderson*, 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (Kennedy, J., concurring))); *Black*, 11 Vet. App. at 17; *see also* 38 U.S.C. § 7261 (defining the Court's scope of review).

In sum, because the plain wording of Diagnostic Code 7806 is that systemic therapy includes the use of corticosteroids without any limitation to such use being oral or parenteral as opposed to topical, we hold that Mr. Johnson's use of a topical corticosteroid is systemic therapy within the meaning of Diagnostic Code 7806. Accordingly, we will reverse the Board's finding to the contrary, and remand for assignment of the appropriate disability rating and effective date.

## B. Applicability of a Rating for Scarring

At the outset, we note that Mr. Johnson's argument that he is entitled to a separate rating for scarring caused by his service-connected skin condition reflects a failure to appreciate that, even if his skin condition caused scarring, he is to be rated only as to either his skin condition or the scarring, whichever is predominant. Otherwise stated, he is not entitled to a rating for both. *See* Diagnostic Code 7813 (explicitly requiring skin conditions like Mr. Johnson's to be rated under "disfigurement ..., scars ..., *or* dermatitis ..., depending upon the predominant disability"). Moreover, Mr. Johnson makes no argument that his scarring is predominant to his skin condition. *Compare* R. at 656–57 (Mr. Johnson's lay testimony that his skin condition causes both a rash and scarring), *with* R. at 983 (finding no scarring in a March 2008 C & P examination) and R.

at 27 (Mr. Johnson informed his November 2010 C & P examiner that a scar on his buttocks was from a previous cyst). In fact, a plain review of the record does not reflect that Mr. Johnson's scarring is related to his current skin condition, but rather is related to a previous cyst unrelated to his current condition. *See* R. at 27.

In sum, Mr. Johnson fails to demonstrate Board error in not awarding him a separate disability rating for scarring. *See Hilkert v. West,* 12 Vet.App. 145, 151 (1999) (en banc) (appellant bears burden of demonstrating error on appeal), *aff'd per curiam,* 232 F.3d 908 (Fed.Cir.2000) (table).

## IV. CONCLUSION

Upon consideration of the foregoing, the Board's finding that Mr. Johnson has not received systemic treatment within the meaning of Diagnostic Code 7806 is REVERSED, and the matter is REMANDED for assignment of the appropriate disability rating and effective date. The Board's decision as to Mr. Johnson's scarring is AFFIRMED.

HAGEL, Chief Judge, filed the opinion of the Court.

KASOLD, Judge, filed an opinion concurring in part and dissenting in part.

KASOLD, Judge, concurring in part and dissenting in part:

I concur with the holding that the term "systemic therapy," as used in 38 C.F.R. § 4.118, Diagnostic Code (DC) 7806, does not by its plain meaning exclude the use of topical corticosteroids. That part of the Board decision should be reversed. However, wholly reversing the denial of benefits—i.e., awarding benefits in the first instance—is inappropriate. This is because the Board—having mistakenly believed topical corticosteroid use was not a sys-

temic therapy within the meaning of DC 7806—never found whether the treatment Mr. Johnson received was "required" immunosuppressive treatment within the meaning of DC 7806. *See* DC 7806 (providing disability ratings when "systemic therapy such as corticosteroids *or other immunosuppressive drugs* [is] *required"* for specified periods of time) (emphasis added).

The Court should not, in the first instance, condone the use of corticosteroids on a constant or near-constant basis as "required" immunosuppressive therapy within the meaning of DC 7806 solely because a veteran chose to use corticosteroids. Doing so not only goes beyond our appellate duty to review—not find facts in the first instance—findings of the Board; in this instance it essentially renders a medical opinion that rewards behavior that may not be medically appropriate. *See, e.g.,* MERCK MANUAL 647 (19th ed. 2011) (Section 7, Chapter 72, Principles of Topical Dermatologic Therapy) (noting that topical corticosteroids "can cause skin atrophy, striae [streaks on skin], and acneiform [acne-like] eruptions when used for > 1 mo. This effect is particularly problematic on the thinner skin of the face or genitals.... High-potency formulations may cause adrenal suppression when used in children, over extensive skin surfaces, or for long periods.").

Succinctly stated, the Board's denial of benefits should be set aside and the matter remanded for the Board to determine, in the first instance, if the use of topical corticosteroids in this case was "required" immunosuppressive therapy within the meaning of DC 7806. To do otherwise is unwarranted and unwise. *See Tucker v. West,* 11 Vet.App. 369, 374 (1998) (remand, and not reversal, is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of

reasons or bases for its determinations, or where the record is otherwise inadequate"); *see also Deloach v. Shinseki,* 704 F.3d 1370, 1380 (Fed.Cir.2013) ("[W]here the Board has performed the necessary fact-finding and explicitly weighed the evidence, the Court of Appeals for Veterans Claims should reverse when, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed."); *see also* MERCK MANUAL at 647.