Citation Nr: 1719248 
Decision Date: 05/01/17 Archive Date: 06/06/17

DOCKET NO. 10-03 334 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to an evaluation in excess of 30 percent for folliculitis of the scalp with keloid residuals before January 28, 2015.

2. Entitlement to an evaluation in excess of 30 percent for folliculitis of the scalp with keloid residuals and acne vulgaris from January 28, 2015.


REPRESENTATION

Veteran represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

K. M. Georgiev, Associate Counsel


INTRODUCTION

The Veteran served on active duty from April 1979 to April 1983.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida, which continued an evaluation of 30 percent for folliculitis of the scalp with keloid residuals. 

By rating decision dated November 2015, the Appeals Management Center (AMC) granted service connection for acne vulgaris with effective date January 28, 2015. The AMC evaluated the acne vulgaris with the already service-connected folliculitis of the scalp with keloid residuals and continued the 30 percent rating for both skin conditions considered together.

The Veteran had a travel board hearing before the undersigned Veterans Law Judge in September 2011. A transcript of that proceeding has been associated with the claims file.

The Board remanded this matter in February 2012, December 2014, and May 2016 for further development and the matter is again before the Board. As records have been associated with the file to the extent possible and VA examinations conducted, all remand instructions are complete. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (a remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand instructions).




FINDING OF FACT

The Veteran's folliculitis of the scalp with keloid residuals and acne does not affect more than 40 percent of the entire body or more than 40 percent of exposed areas, and has not required constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs during the past 12-month period or any 12-month period within the relevant time frame.


CONCLUSION OF LAW

The criteria for a rating in excess of 30 percent for a skin disability, classified as folliculitis of the scalp with keloid residuals and acne, have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 4.7, 4.21, 4.118, Diagnostic Codes 7828, 7806 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

In regard to the Veteran's claim for entitlement to an increased rating for service-connected skin condition, because service connection, an initial rating, and an effective date have been assigned, the notice requirements of the VCAA, 38 U.S.C.A. § 5103 (a) (West 2014) have been met. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007). Further, a September 2008 VCAA letter satisfied the requirements.

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records and VA medical records are in the file. The Veteran has not referenced outstanding records that he wanted VA to obtain or that he felt were relevant to the claim. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on a claim. 38 C.F.R. 
§ 3.159(c)(4)(i) (2015). The Veteran was provided several VA examinations for his skin, in November 2008, February 2012, and July 2015. Each examiner took into account the Veteran's reported history, his current symptoms, and review of the available private and VA treatment records. Therefore, the Board finds the examination reports to be thorough and complete and sufficient upon which to base a decision with regards to the claim. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Legal Criteria for Increased Rating

Disability evaluations are determined by the application of a schedule of ratings that is based on average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2014). Percentage evaluations are determined by comparing the manifestations of a particular disorder with the requirements contained in the VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4 (2015). The percentage ratings contained in the Rating Schedule represent, as far as can practically be determined, the average impairment in earning capacity resulting from such disease or injury and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2015). 

The degree of impairment resulting from a disability is a factual determination and generally the Board's primary focus in such cases is upon the current severity of the disability. Francisco v. Brown, 7 Vet. App. 55, 57-58 (1994); Solomon v. Brown, 6 Vet. App. 396, 402 (1994). Staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). There is no indication that a staged rating is appropriate here.

If there is a question as to which evaluation to apply to the Veteran's disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2016). 

Legal Criteria for Increased Rating for Skin Disability

Amendment was made to certain criteria for rating the skin, effective October 2008. See 73 Fed. Reg. 54,708 (2008) (codified at 38 C.F.R. § 4.118 , DCs 7800 to 7805 (2014)). However, the amended regulations effective October 2008 are only applicable to claims received on or after October 23, 2008, or if the Veteran requests review under the clarified criteria, which is not the case in the current claim. See 73 Fed. Reg. 54708 (2008). As such, the Board will not consider these regulations in this case.

In this case, the Veteran's skin disability, acne vulgaris and folliculitis of the scalp with keloid residuals, is rated under Diagnostic Code 7828-7806. 

Under Diagnostic Code 7828 for acne, deep acne (deep inflamed nodules and pus-filled cysts) affecting 40 percent or more of the face and neck is rated at 30 percent. Deep acne (deep inflamed nodules and pus-filled cysts) affecting less than 40 percent of the face and neck, or; deep acne other than on the face and neck is rated at 10 percent. Superficial acne (comedones, papules, pustules, superficial cysts) of any extent is noncompensable. The code also provides that acne may be rated instead as disfigurement of the head, face, or neck (DC 7800) or scars (DC's 7801, 7802, 7803, 7804, or 7805), depending upon the predominant disability. 38 CFR 4.118.

Under Diagnostic Code 7806, dermatitis or eczema with more than 40 percent of the entire body or more than 40 percent of exposed areas affected, or; constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs required during the past 12-month period, is rated at 60 percent. The skin disorder with 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected, or; systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of six weeks or more, but not constantly, during the past 12-month period, is rated at 30 percent. The skin disorder with at least 5 percent, but less than 20 percent, of the entire body, or at least 5 percent, but less than 20 percent, of exposed areas affected, or; intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of less than six weeks during the past 12-month period, is rated at 10 percent. Less than 5 percent of the entire body or less than 5 percent of exposed areas affected, and; no more than topical therapy required during the past 12-month period is noncompensable. The code also provides that acne may be rated instead as disfigurement of the head, face, or neck (DC 7800) or scars (DC's 7801, 7802, 7803, 7804, or 7805), depending upon the predominant disability. Id.

Facts and Analysis

The Veteran contends that his symptoms are worse than the current 30 percent disability rating assigned under DC 7828-7806. 

An August 2007 VA treatment note reflects Naproxen prescribed for pain and inflammation, in regard to painful keloids on the back.

In September 2008, a VA dermatology note reflects lesions on the chest, 1-4 cm, hyperpigmented, with pain and itching. Gabapentin, medicated soap and Sarna lotion were prescribed. The Veteran reported that his skin condition makes him feel embarrassed and self-conscious about his looks.

There is no indication that Naproxen, Gabapentin, and Sarna lotion constitute corticosteroid or immunosuppressive drugs.

The Veteran appeared for a VA examination in November 2008. The examiner noted that the Veteran reported symptoms of itching, pain and tenderness, and stated that his condition improves and worsens and his treatment is limited to medicated soap. The examiner diagnosed the Veteran with moderate to severe folliculitis of the scalp with keloid residuals, to affect 30 to 40 percent of his exposed body area and 20 percent of his total body area. The examiner noted the keloid formations to be warty lesions, raised, non-tender, and without discharge, and found no infection, boils, or blisters. The Veteran stated that he left his job working in construction because the sun irritated his scalp lesions. The examiner found that the Veteran's skin condition was unlikely to prevent him from sedentary and non-sedentary employment.

In March 2009, a VA medical professional noted that the Veteran suffered from "multiple small, bumpy lesions all over the face, scalp and mid back with scars, keloid formation posterior scalp, anterior chest and mid back." In December 2011, a VA medical professional noted a thick, four by four centimeter area of keloids on the Veteran's left upper back.

At the September 2011 hearing, he stated that his skin condition is painful and itchy, covers areas of his body other than his scalp, and is worsened by warm weather. The Veteran stated that he takes pain pills for his back and creams.

The Veteran appeared for a second VA examination in February 2012. The examiner noted that the Veteran was diagnosed with folliculitis of the scalp with keloid residuals in 1983. The examiner further noted that in the past year, the Veteran has had his condition managed conservatively in the outpatient setting and has required no ER visits, no hospitalizations, no operative procedures, and has not been the subject of additional evaluations. The Veteran relayed that in the past year, he has flare-ups characterized by pimples and boils on the scalp occurring about once a month with a duration of 3 to 4 days to about a week.

The February 2012 examiner found 5 percent of the Veteran's total body area and 5 percent of the Veteran's exposed body area, face, neck, and hands, affected by his skin condition. The examiner found no folliculitis present at the time of exam, and found keloids present as oval hypertrophic skin patches on the scalp of varying sizes usually about one centimeter or less, usually seen on the top and mid portion of the occiput. The examiner found that the Veteran had not been treated with oral or topical medications, or had any other treatments or procedures, in the past 12 months for his skin condition. The Veteran relayed that he had treated his skin condition by applying a cream every other day but he stopped a month ago due to skin irritation; he did not remember the type of cream.

The February 2012 examiner found that the Veteran's skin condition does not cause scarring or disfigurement of the head, face or neck. He had no benign or malignant skin neoplasms, and no systemic manifestations due to any skin diseases. The Veteran has had no debilitating or non-debilitating episodes in the past 12 months due to urticaria, primary cutaneous vasculitis, erythema multiforme, or
toxic epidermal necrolysis. The examiner found that the Veteran does not have dermatitis, eczema, bullous disorders, psoriasis, infections of the skin, cutaneous manifestations of collagen vascular disease or papulosquamous disorders. The examiner found that the Veteran did not have hyperhidrosis, alopecia areata, scarring alopecia, vitiligo, or acne/chloracne. The examiner found that the Veteran had no benign or malignant neoplasm or metastases related to his skin condition. The Veteran reported flare-ups of pimples and boils of the scalp once a month, 3-4 days to a week. The examiner found that the Veteran had no other pertinent physical findings, complications, conditions, signs and/or symptoms related to his skin condition, and that the Veteran's skin conditions do not impact his ability to work.

The Veteran appeared for a VA examination in July 2015. The examiner diagnosed folliculitis with keloid residuals and acne with significant scarring. The Veteran stated every other month he experiences flare-ups, and he still gets pustules and papules and some deeper involvement on his face and upper back. The Veteran stated that he has been mocked for his physical appearance since he was 25, which impacted his ability to work. The examiner stated scar residuals of cystic acne were present over both cheeks and some neck, affecting 5-10 percent of exposed areas. Folliculitis with keloid residuals were present at the upper neck/ occipital region, covered 7cm by 6cm, affecting less than 5 percent of total body area and 5-10 percent of exposed areas. There were also scar residuals from acne on the upper back and chest, affecting 20 percent of exposed areas, the number includes prior described exposed areas for scar residuals of cystic acne and folliculitis with keloid residuals. All of the scar residuals were non tender, stable, superficial and not associated with functional impairment. The Veteran was not treated with oral or topical medications, treatments or procedures in the past 12 months for a skin condition. The Veteran was noted to have superficial and deep acne (deep inflamed nodules and pus filled cysts) affecting less than 40 percent of the face and neck and affecting body areas other than the face and neck. There was no active folliculitis and minimal active acne, as there were two active lesions on the face.

Also in January 2015, the examiner specified the service-connected skin condition affects the scalp, back of the neck, chest, shoulders, and back, and although prior VA examinations addressed scalp only, the condition was likely present at the time of prior examinations. In regard to whether folliculitis and acne are separate conditions, the examiner stated that the medical literature supports that acne and its variants are also types of folliculitis. The examiner elaborated that folliculitis is the name given to a group of skin conditions in which there are inflamed hair follicles. The result is a tender red spot, often with a surface pustule. Folliculitis may be superficial or deep. It can affect anywhere there are hairs, including chest, back, buttocks, arms and legs. 

The Court has held that a veteran may not be compensated twice for the same symptomatology as "such a result would over compensate the claimant for the actual impairment of his earning capacity." Brady v. Brown, 4 Vet. App. 203, 206 (1993). This would result in pyramiding, contrary to the provisions of 38 C.F.R. § 4.14. The Court has acknowledged, however, that when a veteran has separate and distinct manifestations attributable to the same injury, he should be compensated under different Diagnostic Codes. Esteban v. Brown, 6 Vet. App. 259 (1994); Fanning v. Brown, 4 Vet. App. 225 (1993).

The Board acknowledges the Court's recent decision in Johnson v. McDonald, which found that Diagnostic Code 7806 is unambiguous and "explicitly mentions corticosteroids as an example of 'systemic therapy' and does not further distinguish between different types of corticosteroid application." 27 Vet. App. 497 (2016). In October 2016, VA implemented a stay on the adjudication of appeals where the veteran uses a topical corticosteroid for a service-connected skin condition, and would potentially be entitled to a higher disability rating (under the applicable diagnostic codes in 38 C.F.R. § 4.118 ) if topical application of a corticosteroid were considered a "systemic therapy." In this case, there is no evidence of record that the Veteran is currently using, or has previously used, a topical corticosteroid to treat a service-connected skin condition. Therefore, the Board is not precluded from adjudicating his claim.

The Board has considered whether separate evaluations are warranted for the Veteran's folliculitis, keloids, acne, and/or scars. However, the record supports that these conditions have resulted in the same symptoms which have consistently been rated together as the service-connected skin disorder. As such, separate ratings would constitute impermissible separate rating for the same symptoms. 

The Board has reviewed the Diagnostic Codes for disfigurement of the head, face, or neck (DC 7800) or scars (DC's 7801, 7802, 7803, 7804, or 7805) and no higher rating is warranted under these codes. Under DC 7800, there is no visible or palpable tissue loss and either gross distortion or asymmetry of three or more features or paired sets of features (nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips), or; with six or more characteristics of disfigurement to warrant an 80 percent rating, or visible or palpable tissue loss and either gross 
distortion or asymmetry of two features or paired sets of features (nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips), or; with four or five 
characteristics of disfigurement to warrant a 50 percent rating. Under the codes for scars, there is no evidence of deep and nonlinear scars with area or areas of 144 square inches 40 (929 sq. cm.) or greater, to warrant a higher rating. DC 7801, 38 CFR 4.118.

As DC 7828 for acne does not go higher than 30 percent, a higher rating is considered under DC 7806.

There is no indication that the Veteran's folliculitis with keloids and acne, considered together for the duration of the appeal, manifest as more than 40 percent of the entire body or more than 40 percent of exposed areas affected, or; constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs required during the past 12-month period, as would warrant a higher 60 percent rating. 

In sum, the Board finds the preponderance of the evidence is against the claim for a rating in excess of 30 percent for the service-connected skin disability for the period on appeal. Thus, the benefit of the doubt doctrine is not for application.

Rice Considerations

The Board acknowledges that the Veteran has indicated that his physical appearance has impaired his employability and he was unable to work construction due to the sun irritating his lesions. However, the November 2008 and February 2012 examiners stated the skin disorder did not render the Veteran unable to work, and the July 2015 examiner found no functional impairment. The Board notes further that the combined rating is 30 percent, as such, the Veteran does not qualify for TDIU under schedular consideration. 38 C.F.R. § 4.16(a) (2016). As such, in light of the competent medical evidence of record which indicates the Veteran remains able to work substantially gainful employment, and the fact that the Veteran's current rating contemplates some impairment to his employability due to his skin disorder, the Board finds TDIU not raised under Rice v. Shinseki, 22 Vet. App. 447 (2009).

Extraschedular Considerations

The above determinations are based upon application of the pertinent provisions of VA's rating schedule. The Board finds that the record does not reflect that the Veteran's disability is so exceptional or unusual as to warrant the assignment of a higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321(b)(1). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008).

In this regard, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule and the assigned schedular evaluation is therefore adequate, and no extraschedular referral is required. Id., see also VAOGCPREC 6-96 (Aug. 16, 1996). Otherwise, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, VA must determine whether the claimant's exceptional disability picture exhibits other related factors, such as those provided by the extraschedular regulation (38 C.F.R. § 3.321(b)(1)) as "governing norms" (which include marked interference with employment and frequent periods of hospitalization).

The Board also notes that the record does not establish that the schedular criteria are inadequate to evaluate the Veteran's skin disorder so as to warrant the assignment of a higher evaluation on an extra-schedular basis. There is no showing that the Veteran's skin disorder is manifested by symptomatology, to include pain, itching, and disfigurement, not contemplated by the rating criteria. Accordingly, the Board finds that the criteria for submission for assignment of an extra-schedular rating pursuant to 38 C.F.R. § 3.321(b)(1) are not met. See Bagwell v. Brown, 9 Vet. App. 337, 339 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).



ORDER

Entitlement to an evaluation in excess of 30 percent for folliculitis of the scalp with keloid residuals before January 28, 2015 is denied.

Entitlement to an evaluation in excess of 30 percent for folliculitis of the scalp with keloid residuals and acne vulgaris from January 28, 2015 is denied.




____________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs