Citation Nr: 1755089 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 11-21 383 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUE

Entitlement to an initial compensable rating for tinea pedis.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

L. McCabe, Associate Counsel


INTRODUCTION

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (2012).

The Veteran had active service from January 1964 to December 1965.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina, which, in pertinent part, granted service connection for tinea pedis, assigning a noncompensable (0 percent) rating effective from November 5, 2010.

In February 2014, the Veteran testified at a videoconference hearing before the undersigned Veterans Law Judge (VLJ); a transcript of that hearing is of record.

The case was remanded by the Board for further development in June 2014 and again in July 2016. Unfortunately, as will be discussed below, still further development is required. Accordingly, the appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.


REMAND

Another remand is required in this case. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the Veteran's claims so that he is afforded every possible consideration.

As noted above, the Board remanded the case in July 2016 for a clarifying medical opinion concerning the nature of the Veteran's tinea pedis treatment during the appellate period. 

In particular, the Board noted that evidence reflected that the Veteran's tinea pedis has been productive of chronic itching, scaling, fissuring and cracking of the skin of his feet. See, e.g., October 2011 VA Skin Diseases Disability Benefits Questionnaire (DBQ) (diagnosing tinea pedis of the bilateral feet); November 2011 VA Skin Diseases Examination Addendum Report (classifying the Veteran's tinea pedis as "chronic recurrent"); April 2012 VA Primary Care Attending Addendum Note (reflecting that the Veteran "sees a private podiatrist for chronic tinea pedis with fissuring and cracking"); April 2012 VA Primary Care Attending Addendum Note (describing the Veteran's condition as "mild to mod[erate] chronic scaling and fissuring"); April 2012 Letter from P.J.S., D.P.M. (reflecting that the Veteran "has mild to moderate chronic scaling and fissuring despite long term treatment" and noting that suck treatment will likely continue "long into the future" to control his symptoms); July 2014 VA Skin Diseases DBQ (reflecting a diagnosis of tinea pedis affecting less than 5% of the Veteran's total body area and reporting the Veteran's assertion that "[t]he skin itches between the toes all the time"). Additionally, the medical evidence showed treatment of the Veteran's chronic skin condition with various topical and oral medications, including ketoconazole cream, econazole cream, Spectazole cream, urea ointment, and additional oral medications. See, e.g., August 2015 VA Primary Care Follow Up Note (reflecting an active medications list including ketoconazole 2% cream to treat fungal infection); July 2014 VA Skin Diseases DBQ (noting that the Veteran "has been using the prescribed ketoconazole 2% cream which he applies between the toes and the plantar surface of the feet to prevent itching and cracking of the skin"); April 2014 Treatment Record from P.J.S., D.P.M. (reflecting prescribed medications for the treatment of his skin condition including econazole 1% topical cream, Spectazole 1% topical cream, and urea 50% ointment); October 2011 VA Skin Diseases DBQ (stating that the Veteran's skin disability has been treated by "soaps, powders, creams, and oral medication"; noting that the Veteran was "prescribed oral Lamisil in 1/2010 at the VAMC in Charleston"; reflecting "near constant" use of oral medications to treat his condition in the past 12 months; and reporting the Veteran's contention that he was currently "taking an oral medication prescribed by his PMD for foot fungus but he could not remember name at exam").

Based on this evidence, the RO assigned the Veteran's tinea pedis a noncompensable rating under 38 C.F.R. § 4.118, Diagnostic Code (DC) 7813 (2017). DC 7813 applies to dermatophytosis and indicates that this disability is to be rated as disfigurement of the head, face, or neck (DC 7800), scars (DC 7801, 7802, 7803, 7804, or 7805), or dermatitis (DC 7806), depending upon the predominant disability. 38 C.F.R. § 4.118.

The RO determined that the predominant disability was akin to dermatitis (7806) and evaluated the Veteran's tinea pedis as such. See 38 C.F.R. § 4.20 (2017). See also 38 C.F.R. § 4.118, DCs 7800-7805 (requiring the presence of scarring). Under Code 7806 (dermatitis or eczema) a noncompensable rating is warranted when less than 5 percent of the entire body or less than 5 percent of exposed areas are affected, and no more than topical therapy was required during the past 12-month period. A 10 percent rating is warranted for involvement of at least 5 percent, but less than 20 percent, of the entire body or at least 5 percent, but less than 20 percent, of exposed areas are affected; or with the need for intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs for a total duration of less than six weeks during the past 12-month period. A 30 percent rating is warranted where the area of involvement is 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas; or with a need for systemic therapy such as corticosteroids or other immunosuppressive drugs for a total duration of six weeks or more, but not constantly, during the past 12-month period. The highest (60 percent) rating requires involvement of more than 40 percent of the entire body or more than 40 percent of exposed areas, or with the need for constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs in the past 12-month period. 38 C.F.R. § 4.118, DC 7806.

In the prior July 2016 remand, the Board also noted that the United States Court of Appeals for Veterans Claims (Court) recently considered the question of the types of treatment that qualify as "systemic therapy such as corticosteroids or other immunosuppressive drugs" under Diagnostic Code 7806. In Johnson v. McDonald, 27 Vet. App. 497 (2016), the Court held that because DC 7806 "explicitly mentions corticosteroids as an example of 'systemic therapy' and does not further distinguish between different types of corticosteroid application," then the use of a topical corticosteroid constitutes "systemic" corticosteroid therapy for the purposes of assignment of ratings under DC 7806. See Johnson, 27 Vet. App. at 502-504; see also 38 C.F.R. § 4.118, DC 7806. Additionally, the Court found that the "topical therapy" identified in the noncompensable rating criteria necessarily referred to "non-corticosteroid" topical treatment. See Johnson, 27 Vet. App. at 504. 

The Court subsequently held that the types of systemic treatment that are compensable under Diagnostic Code 7806 are not limited to "corticosteroids or other immunosuppressive drugs"; rather, compensation is available for "all systemic therapies that are like or similar to corticosteroids or other immunosuppressive drugs." See Warren v. McDonald, 28 Vet. App. 194, 197 (2016); see also 38 C.F.R. § 4.118, DC 7806. In so finding, the Court specifically determined that the Board erred in failing to make a determination "as to whether Lamisil is a systemic therapy like or similar to a corticosteroid or other immunosuppressive drug." See Warren, 28 Vet. App. at 198 (emphasis in original). 

Since the Board's prior remand, VA appealed the Court's holding in Johnson v. McDonald, supra, and a stay was put in place pending final resolution of this matter. The Federal Circuit recently issued the decision of Johnson v. Shulkin, 862 F.3d 1351 (Fed. Cir. July 14, 2017), which reversed the Court's holding in this matter, and the stay on affected appeals was lifted.

In reversing the Court's holding, the Federal Circuit found the Court erred when it read Diagnostic Code 7806 as unambiguously elevating any form of corticosteroid treatment, including any degree of topical corticosteroid treatment, to the level of "systemic therapy." The Federal Circuit noted that Diagnostic Code 7806 draws a clear distinction between "systemic therapy" and "topical therapy" as the operative terms of the Diagnostic Code. Further, the Federal Circuit went on to explain that "systemic therapy" means treatment pertaining to or affecting the body as a whole, whereas "topical therapy" means treatment pertaining to a particular surface area, as a topical anti-infective applied to a certain area of the skin and affecting only the area to which it is applied. Although the Federal Circuit acknowledged that a topical corticosteroid treatment could meet the definition of "systemic therapy" if it was administered on a large enough scale such that it affected the body as a whole, the Federal Circuit emphasized this possibility does not mean that all applications of topical corticosteroids amount to systemic therapy. See Johnson v. Shulkin, 862 F.3d at 1356-56. 

In its July 2016 remand, the Board instructed that the Veteran's claims file be provided to an appropriate clinician for additional medical comment concerning the nature of the Veteran's various tinea pedis treatments. See July 2016 Board Remand. The Board instructed that the examiner consider the evidence identifying "treatment for tinea pedis [during the appellate period] including, but not limited to, ketoconazole cream, econazole cream, Spectazole cream, urea ointment, and additional oral medications such as Lamisil." Id. In light of this identified treatment regimen, the examiner was asked to make a determination as to whether any treatment undergone by the Veteran for his tinea pedis can be classified as "a systemic therapy like or similar to a corticosteroid (topical or otherwise) or other immunosuppressive drug." Id.

Pursuant to that remand, a VA dermatologist performed a review of the Veteran's claims file in November 2016 and noted that the Veteran had been prescribed "topical antifungals (ketoconazole cream, miconazole cream, spectazole cream, econazole cream, Lamisil cream)" as well as "a topical keratolytic" ("Urea 40% cream"), during the pendency of his claim. See November 2016 VA Compensation and Pension (C & P) Examination Report. However, the examiner found "[n]o evidence of oral antifungal prescribed . . ." for the Veteran's tinea pedis. Id. The examiner additionally noted that the Veteran was prescribed "oral fluconazole" by his "outside physician," but stated that "it [wa]s unclear if the reason for taking this medication was his tinea pedis or another ailment." The examiner concluded that "[n]o medications that could be deemed similar to systemic steroids and no immunosuppresants were prescribed for this patient's tinea pedis." Id.

This examination is inadequate for several reasons. First, in finding that here was "[n]o evidence of oral antifungal prescribed . . ." for the Veteran's tinea pedis, the VA examiner failed to consider or address the October 2011 VA examination report which specifically noted that the Veteran was "prescribed oral Lamisil in 1/2010 at the VAMC in Charleston" and which found "near constant" use of oral medications to treat his condition in the past 12 months. See October 2011 VA Skin Diseases DBQ. Thus, the examiner's opinion was premised upon what amounts to an inaccurate factual premise, namely that there was no evidence that the Veteran was prescribed an oral antifungal for the treatment of his tinea pedis, despite contemporaneous medical evidence to the contrary. See Reonal v. Brown, 5 Vet. App. 458 (1993) (a medical opinion based on an inaccurate factual premise is not probative). 

Additionally, the November 2016 VA examiner failed to provide any rationale to support the determination that "[n]o medications that could be deemed similar to systemic steroids and no immunosuppresants were prescribed for this patient's tinea pedis." See Stefl v. Nicholson, 21 Vet. App. 120, 123-25 (2007) (holding that an adequate examination and medical opinion addresses the appropriate theories of entitlement and provides a supporting rationale for any medical opinion). Moreover, although the VA examiner acknowledged that the Veteran had been prescribed "oral fluconazole" by his "outside physician," the examiner failed to provide any explanation as to why this medication was not prescribed for the treatment of the Veteran's tinea pedis, instead merely stating that "it [wa]s unclear if the reason for taking this medication was his tinea pedis or another ailment." See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (noting that most of the probative value of a medical opinion comes from its reasoning); Stefl, 21 Vet. App. at 125 (holding that "the mere conclusion by a medical doctor is insufficient to allow the Board to make an informed decision as to what weight to assign to the doctor's opinion"); 38 C.F.R. § 4.2 (2017) (stating that if the findings on an examination report do not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes). See also Stegall v. West, 11 Vet. App. 268 (1998) (holding that a remand by the Court or the Board confers on the Veteran, as a matter of law, the right to compliance with the remand orders); D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (holding that only "substantial" rather than strict compliance with the Board's remand directives is required under Stegall); accord Dyment v. West, 13 Vet. App. 141, 146-47 (1999).

Accordingly, as the requested VA opinion is not adequate, due to the conflicting medical evidence of record, in light of the Federal Circuit's Johnson decision, and because the Veteran's last VA examination addressing the nature and severity of his service-connected tinea pedis was conducted in July 2014, so more than three years ago, the Board finds that another VA examination is warranted to determine the current severity of the Veteran's tinea pedis and to provide an adequate opinion concerning the nature of the Veteran's various tinea pedis treatments. See 38 C.F.R. § 3.327(a) (2017) (providing that reexaminations will be requested whenever VA needs to determine the current severity of a disability). See also Palczewski v. Nicholson, 21 Vet. App. 174, 181-82 (2007), citing Caluza v. Brown, 7 Vet. App. 498, 505-06 (1998) ("Where the record does not adequately reveal the current state of the claimant's disability . . . the fulfillment of the statutory duty to assist requires a thorough and contemporaneous medical examination."); Olsen v. Principi, 3 Vet. App. 480, 482 (1992); Proscelle v. Derwinski, 2 Vet. App. 629, 632 (1992); Schafrath v. Derwinski, 1 Vet. App. 589 (1991). See, too, Caffrey v. Brown, 6 Vet. App. 377 (1994) (determining that the Board should have ordered a contemporaneous examination of the Veteran because a 23-month-old examination was too remote in time to adequately support the decision in an appeal for an increased rating).

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain any recent outstanding VA treatment records and associate them with the electronic claims file.

2. Thereafter, schedule the Veteran for appropriate VA examination to determine the current nature and level of severity of his service-connected tinea pedis. The Veteran's claims file, including a copy of this REMAND, must be made available to and reviewed by the examiner. The examination report must reflect that such a review was undertaken.

The examiner should elicit a full history from the Veteran, including information concerning the duration of his oral medication treatment regimen and information concerning the specific oral medications prescribed by his private treating physicians. In this regard, the Board notes that the Veteran is competent to report his prescription and treatment history. See, e.g., Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007).

The examination should also include any necessary diagnostic testing or evaluation and all clinical findings should be reported in detail, including specifically the size and location of any affected areas, identification and description of any related scarring, the types of therapy and treatment required, and any functional impairment caused.

After eliciting a full history, conducting a complete review of the claims file, performing an examination of the Veteran, and completing any clinically indicated diagnostic testing, the examiner must diagnose and describe in detail all current skin disorders found to be present.

If possible, the appropriate Disability Benefits Questionnaire (DBQ) should be completed.

After obtaining a complete medical history of the Veteran's tinea pedis, the examining VA dermatologist is asked to identify all medications (i.e. topical creams and oral medications) used to treat the Veteran's condition throughout the pendency of the appeal, so from November 5, 2010, forward. 

In this regard, the Board notes that the evidence of record identifies treatment including, but not limited to, ketoconazole cream, econazole cream, Spectazole cream, urea ointment, and additional oral medications such as Lamisil and fluconazole. See, e.g., November 2016 VA C & P Examination Report; August 2015 VA Primary Care Follow Up Note; July 2014 VA Skin Diseases DBQ; April 2014 Treatment Record from P.J.S., D.P.M.; October 2011 VA Skin Diseases DBQ.

For each medication identified, the examiner is asked to: 

(1) Note the duration of the treatment (if possible); and 

(2) Offer an opinion as to whether the medication can be classified as a "systemic" therapy. 

If any medication taken for the Veteran's tinea pedis is determined to be a "systemic" therapy, the VA examiner is also asked to:

Offer an opinion as to whether any "systemic" therapy is "like or similar to corticosteroids or other immunosuppressive drugs." 

See Warren v. McDonald, 28 Vet. App. 194, 197 (2016) (holding that the types of systemic treatment that are compensable under DC 7806 are not limited to "corticosteroids or other immunosuppressive drugs"; rather, compensation is available for "all systemic therapies that are like or similar to corticosteroids or other immunosuppressive drugs"); see also Johnson v. Shulkin, 862 F.3d 1351, 1354-56 (Fed. Cir. 2017) (finding that "[t]he structure and content of DC 7806 make clear that it contemplates two types of therapy, "systemic therapy" and "topical therapy"; and noting that "the use of a topical corticosteroid could be considered either systemic therapy or topical therapy based on the factual circumstances of each case").

The examiner must provide a comprehensive report including complete rationales for all opinions and conclusions reached, based on his or her clinical experience, medical expertise, and established medical principles, and citing the objective medical findings leading to the conclusions. If any of the above requested opinions cannot be made without resort to speculation, the examiner must state this and specifically explain whether there is any potentially available information that, if obtained, would allow for a non-speculative opinion to be provided. 

The Board again emphasizes that that the Veteran is competent to report his symptoms and treatment history, and such statements by the Veteran regarding symptomatology and treatment history, including those given under oath at the February 2014 Board videoconference hearing, must be considered and addressed in formulating any opinions concerning the severity of his disability. If the examiner rejects the Veteran's reports regarding symptoms and/or his medical treatment history, the examiner must provide a reason for doing so.

3. Following completion of the above directive, review the claims file to ensure compliance with this remand. If the examination report does not include adequate responses to the specific opinions requested, it must be returned to the examiner for corrective action.

4. After completing all of the above, and any additional development deemed warranted, readjudicate the claim on appeal. If the benefits sought are not granted, the Veteran and his representative must be furnished a supplemental statement of the case (SSOC) and afforded a reasonable opportunity to respond before the record is returned to the Board for further review.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



_________________________________________________
P.M. DILORENZO
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2017).