Citation Nr: 1761229 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 11-26 629 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to an increased rating in excess of 10 percent for hyperkeratosis of the bilateral heels.

2. Entitlement to an initial rating in excess of 30 percent for asthma prior to December 2, 2011.


ATTORNEY FOR THE BOARD

M. Neal, Associate Counsel



INTRODUCTION

The Veteran served on active duty from September 1999 to September 2003.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from July 2011 and April 2010 rating decisions of the San Juan, Puerto Rico, Regional Office (RO) of the Department of Veterans Affairs (VA). 

The Board has modified the Veteran's claims to encompass all disorders raised by the record. See Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009) (stating that, when determining the scope of a claim, the Board must consider "the [Veteran's] description of the claim; the symptoms the [Veteran] describes; and the information the [Veteran] submits or that the Secretary obtains in support of that claim").

The RO remanded the matter for further development in July 2015. In February 2017, the Board remanded the issue of an increased rating for asthma for further development and stayed the issue of an increased rating for hyperkeratosis of the bilateral heels pursuant to Johnson v. McDonald, 27 Vet. App. 497 (2016). However, in an August 2017 decision, the Board lifted that stay and remanded the issue of an increased rating for hyperkeratosis of the bilateral heels for issuance of a Supplemental Statement of the Case. Further development has been accomplished, and the claims of increased ratings for hyperkeratosis of the bilateral heels and asthma have been returned for further appellate consideration. See Stegall v. West, 11 Vet. App. 268, 271 (1998).


FINDINGS OF FACT

1. Throughout the period of appeal, the Veteran's hyperkeratosis of the bilateral heels was not manifested by generalized cutaneous involvement or systemic manifestations; constant or near-constant systemic medication, such as immunosuppressive retinoids, required during the past 12-month period; or intermittent systemic medication required for a total duration of six weeks or more, but not constantly, during the past 12-month period.

2. The Veteran has experienced disability equivalent to bilateral foot injuries associated with hyperkeratosis of the bilateral heels that were of moderate severity.

3. Prior to December 2, 2011, the Veteran's asthma was not manifested by a 1 second forced expiratory volume (FEV-1) of 55-percent predicted or less; an FEV-1 over forced vital capacity (FEV-1/FVC) volume of 55-percent predicted or less; intermittent courses of systemic corticosteroids; required daily use of systemic high dose corticosteroid or immuno-suppressive medications; at least monthly visits to a physician for required care for exacerbations; or more than one attack per week with episodes of respiratory failure.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for hyperkeratosis of the bilateral heels have not been met for any period of appeal. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.118, Part 4, Diagnostic Code 7824 (2017).

2. The criteria for a separate rating of 10 percent for bilateral foot injuries associated with hyperkeratosis of the bilateral heels have been met. 38 U.S.C. §§ 1155, 5107, 5110(a) (2012); 38 C.F.R. §§ 3.102, 3.400(b), 4.6, 4.71a, Part 4, Diagnostic Code 5284 (2017).

3. The criteria for a rating in excess of 30 percent for asthma prior to December 2, 2011, have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.97, Part 4, Diagnostic Code 6602 (2017).




REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (2012) defined VA's duty to notify and assist a Veteran in the development of a claim. VA regulations for the implementation of the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2017).

With respect to the claims of an increased rating for hyperkeratosis of the bilateral heels and a compensable rating for bilateral foot injuries, the Board finds no indication of a failure to notify. See Scott v. McDonald, 789 F.3rd 1375 (Fed. Cir. 2015). In March 2010, the RO mailed the Veteran a VCAA letter detailing the evidentiary requirements of increased disability compensation claims, the evidence that the Veteran should send to VA, and VA's responsibilities to assist the Veteran. Furthermore, the Veteran has neither alleged, nor demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009) (clarifying that the burden of showing that an error is harmful, or prejudicial, normally falls upon the party attacking the agency's determination).

The issue of an increased rating for asthma arises from an initial grant of service connection and assignment of a disability rating. When an initial rating appeal comes before the Board following a decision to grant service connection and assign an initial rating, no additional VCAA notice is required. Once service connection is granted and the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. See Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2006); Dunlap v. Nicholson, 21 Vet. App. 112 (2007); VAOPGCPREC 8-2003 (in which the VA General Counsel interpreted that that separate notification is not required for "downstream" issues following a service connection grant, such as initial rating and effective date claims); 38 C.F.R. § 3.159 (b)(3)(i) (no duty to provide VCAA notice upon receipt of a notice of disagreement).

Pursuant to the duty to assist, VA must obtain "records of relevant medical treatment or examination" at VA facilities. 38 U.S.C. §5103A (c)(2). All records pertaining to the conditions at issue are presumptively relevant. Moore v. Shinseki, 555 F.3d 1369, 1374 (Fed. Cir. 2009); Golz v. Shinseki, 590 F.3d 1317 (Fed. Cir. 2010). Where the Veteran "sufficiently identifies" other VA medical records that he or she desires to be obtained, VA must seek those records even if they do not appear potentially relevant based upon the available information. Sullivan v. McDonald, 815 F.3d 786, 793 (Fed. Cir. 2016) (citing 38 C.F.R. § 3.159 (c)(3)). 

With regard to the duty to assist, the Veteran's pertinent VA and private treatment records have been secured. Pertinent treatment records in Spanish have also been translated. The Veteran was also afforded VA medical opinions in February 2017, October 2015, and June 2011. The Board finds that the opinions obtained are adequate. The opinions were provided by qualified medical professionals and were predicated on a full reading of all available records. The examiners also provided detailed rationales for the opinions rendered. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). The Veteran has also not challenged the adequacy of the opinions obtained. Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of his or her opinion). Thus, the Board finds that VA's duty to assist, including with respect to obtaining a VA medical opinion, has been met. 38 C.F.R. § 3.159(c)(4) (2017).

Legal Criteria

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) found in 38 C.F.R. Part 4. 38 U.S.C. § 1155. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21 (2017). 

Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2017). When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3 (2017). 

The United States Court of Appeals for Veterans Claims (Court) has held that "staged" ratings are appropriate for an increased rating claim where the factual findings show distinct time periods when the service-connected disability exhibits symptoms warranting different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119 (1999).

Lay statements may support a claim for service connection by establishing the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006). Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), they are not competent to provide opinions on medical issues that fall outside the realm of common knowledge of a lay person. See Jandreau, 492 F.3d 1372. Competency must be distinguished from weight and credibility, which are factual determinations going to the probative value of the evidence. Rucker v. Brown, 10 Vet. App. 67, 74 (1997).

The Board has reviewed all of the evidence in the Veteran's claims file, with an emphasis on the evidence relevant to the appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (holding that VA must review the entire record, but does not have to discuss each piece of evidence). Hence, the Board will summarize the relevant evidence where appropriate and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the claim. 

In October 2003, the RO granted service connection for hyperkeratosis of the bilateral heels. The RO assigned a disability evaluation of 10 percent. In April 2010, the RO denied a rating in excess of 10 percent for hyperkeratosis of the bilateral heels. The Veteran contends that her hyperkeratosis of the bilateral heels warrants a higher disability rating, including a separate rating under Diagnostic Code 5284 for foot injuries that impair her ability to stand.

Further, in July 2011, the RO granted service connection for asthma and assigned an initial 30 percent disability rating effective July 16, 2010, the date of claim. Subsequently, the RO assigned a 100 percent disability rating with an effective date of December 2, 2011. The Veteran contends that her asthma warrants a higher initial disability rating for the period prior to December 2, 2011.

Regarding the Veteran's foot disabilities, the regulations establish a general rating formula for diseases of keratinization. 38 C.F.R. § 4.118. Under the General Rating Formula, a 30 percent rating is warranted for either generalized cutaneous involvement or systemic manifestations, and intermittent systemic medication, such as immunosuppressive retinoids, required for a total duration of six weeks or more, but not constantly, during the past 12-month period. In addition, a 60 percent rating is warranted for either generalized cutaneous involvement or systemic manifestations, and; constant or near-constant systemic medication, such as immunosuppressive retinoids, required during the past 12-month period. 38 C.F.R. § 4.118, Part 4, Diagnostic Code 7824 (2017).

Additionally, the regulations establish a general rating formula for foot injuries. 38 C.F.R. § 4.71a. Under the General Rating Formula, a 10 percent rating is warranted for moderate foot injuries, a 20 percent rating is warranted for moderately severe foot injuries, and a 30 percent rating is warranted for severe foot injuries. In addition, a 40 percent rating is warranted for actual loss of use of the foot. 38 C.F.R. § 4.71a, Part 4, Diagnostic Code 5284 (2017). 

The terms "slight," "moderate," and "severe" are not defined in the rating schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to arrive at a just and equitable decision. Additionally, the use of such terminology by VA examiners and others, although an element to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6.
 
Finally, the regulations establish a general rating formula for bronchial asthma. 38 C.F.R. § 4.97. Under the General Rating Formula, a 30 percent rating is warranted for FEV-1 of 56 to 70 percent-predicted, or; FEV-1/FVC of 56 to 70 percent, or; daily inhalational or oral bronchodilator therapy, or; inhalational anti-inflammatory medication. A 60 percent rating is warranted for FEV-1 of 40 to 55 percent-predicted, or; FEV-1/FVC of 40 to 55 percent, or; at least monthly visits to a physician for required care of exacerbations, or; intermittent (at least three per year) courses of systemic (oral or parenteral) corticosteroids. In addition, a 100 percent rating is warranted for FEV-1 less than 40-percent predicted, or; FEV-1/FVC less than 40-percent predicted, or; more than one attack per week with episodes of respiratory failure, or; requires daily use of systemic high dose corticosteroids or immuno-suppressive medications. 38 C.F.R. § 4.97, Part 4, Diagnostic Code 6602 (2017).

Analysis - Hyperkeratosis and Associated Bilateral Foot Injuries

According to treatment records, the Veteran presented to the VA primary care clinic in February 2009. See February 2009 VA primary care note. She was found to have ulcers in the plantar aspect of her feet associated with very dry skin. However, physical limitations due to her hyperkeratosis were not reported at the time. Id. 

A VA examination of hyperkeratosis of the Veteran's heels took place in March 2010. See March 2010 Compensation and Pension Examination Note. The Veteran reported having dry skin on her heels that occasionally opens and bleeds. Id. She also reported constant symptoms, including pain, itching, and bleeding, but no systemic symptoms. Id. In addition, she reported that she used a cream for the skin condition, but did not remember the name of the medication. Id. The examiner noted that the cream was a topical corticosteroid and that the Veteran had used it in the past 12 months.

In a July 2010 letter to the RO, the Veteran stated that her hyperkeratosis of the bilateral heels causes significant functional limitation of her feet, which limits her mobility, ability to stand, and the way she walks. See July 2010 correspondence. In a contemporaneous letter, her private physician, Dr. M.F., indicated that the hyperkeratosis of her heels altered the alignment of her spine and the way she walks. See July 2010 letter from Dr. M.F.

The Veteran presented to a physical rehabilitation consultation in December 2011 with complaints of bilateral foot pain when standing. See December 2011 VA physical medicine rehabilitation consultation note.

In a July 2014 rating decision, the RO granted service connection for a back condition. In the decision, the RO relied, in part, on the July 2010 opinion from Dr. M.F. finding functional limitations due to the Veteran's hyperkeratosis.

An additional VA examination of the Veteran's hyperkeratosis of the heels took place in October 2015. See October 2015 Compensation and Pension Disability Benefits Questionnaire, Foot Conditions. The Veteran reported that the skin of her heels breaks and bleeds if she stands for a long time. Id. She also reported having constant pain, including flare-ups that render her unable to stand. Id. In addition, she reported using an ammonium lactate lotion for the condition. Id. In her report, the examiner noted tender bilateral heels with hyperkeratosis and evidence of vertical cracks. She found that the hyperkeratosis chronically compromised weight-bearing and required cushioned heels and soft textured insoles. In addition, the examiner noted that the condition limited her standing tolerance. The examiner determined that the hyperkeratosis was of moderate severity for both heels.

Upon review of the record, the Board finds, first, that the preponderance of the evidence is against a rating in excess of 10 percent for hyperkeratosis of the bilateral heels for any period of appeal. The medical record reflects that the Veteran's hyperkeratosis is confined to the feet and is not systemic. In addition, there is no evidence that the Veteran treated her hyperkeratosis with a systemic medication at any point during the period of appeal. In the October 2015 VA examination, the Veteran indicated that she used ammonium lactate for her skin condition. Further, the March 2010 VA examination reported that the Veteran used a topical corticosteroid for the skin condition. There is no evidence to doubt the credibility of the examiner. The Veteran has also not provided evidence of at least intermittent use of systemic medication during the period of appeal. Accordingly, the criteria for a rating in excess of 10 percent for hyperkeratosis of the bilateral heels have not been met for any period of appeal. 38 C.F.R. § 4.118.

Simultaneously, however, the Board finds that the 10 percent rating for hyperkeratosis of the bilateral heels does not encompass all of the symptoms that result from the skin condition. In her July 2010 letter, the Veteran indicated that her hyperkeratosis of the bilateral heels caused significant functional limitation of her feet, including with the ability to stand. The Veteran's testimony is corroborated by the October 2015 VA examination, which reported cracks in the Veteran's feet and determined that the skin condition limited her standing tolerance. The Board finds that the Veteran, as a lay person, is competent to testify to her inability to stand due to the hyperkeratosis of her heels. See Jandreau, 492 F.3d at 1372. The Board also finds no evidence to doubt her credibility or that of the examiner.

In addition, the Board notes that VA has conceded that the Veteran's hyperkeratosis of the bilateral heels limits her functional abilities. In granting the Veteran service connection for a back condition, the RO relied on Dr. M.F.'s July 2010 letter in which the physician found that the Veteran's hyperkeratosis of the bilateral heels altered the alignment of her spine and the way she walks. Though not specifically accounting for the Veteran's impaired ability to stand, the medical opinion reflects the functional effects the skin condition has beyond those contemplated by the regulation for diseases of keratinization. 38 C.F.R. § 4.118, Part 4, Diagnostic Code 7824.

Accordingly, the Board finds that a separate disability evaluation is required to account for the Veteran's impaired standing ability as a result of her hyperkeratosis of the bilateral heels. In this regard, the Board finds that the general rating formula for foot injuries most accurately encompasses the Veteran's impaired standing ability. 38 C.F.R. § 4.71a, Part 4, Diagnostic Code 5284; see also Diagnostic Code 7805. Such an evaluation does not constitute pyramiding because neither the current evaluation for hyperkeratosis of the bilateral heels nor the current evaluation for the back condition contemplates an impaired standing ability. 38 C.F.R. § 4.14.

Turning to the assignment of a percent evaluation, the Board notes that the Veteran has provided evidence of an impaired standing ability due to hyperkeratosis of the bilateral heels in her July 2010 letter, with support found in the July 2010 letter from Dr. M.F. Further, the October 2015 VA examination reported that the Veteran's hyperkeratosis of the bilateral heels was of moderate severity. The Board also notes that the Veteran indicated during that examination that her condition had not worsened. There is no evidence of additional or more severe symptoms that are not already contemplated by the Veteran's current evaluations for hyperkeratosis of the bilateral heels and a back condition. Therefore, the Board finds that a separate rating of 10 percent for foot injuries associated with hyperkeratosis of the bilateral heels is warranted. 38 U.S.C. § 5110(a), (b); 38 C.F.R. §§ 3.400(b), 4.2, 4.6, 4.71a, Part 4, Diagnostic Code 5284.

The Board also notes that it has considered the applicability of the benefit-of-the-doubt doctrine. However, because the preponderance of the evidence is against the Veteran's claim for ratings above what is granted herein, that doctrine is not helpful to the Veteran. See 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


Analysis - Asthma

According to the medical record, the Veteran was diagnosed with carpal tunnel syndrome (CTS) in June 2010. See June 2010 VA physical medicine rehabilitation consultation. She was prescribed Prednisone for the condition. See September 2010 VA physical medicine rehabilitation attending note.

On March 19, 2011, the Veteran presented to a private physician, Dr. C, for a pulmonary function test. See March 19, 2011, FVC test report from Dr. C. An FEV-1 of 82-percent predicted and an FEV-1/FVC of 109.1-percent predicted was observed. Dr. C. confirmed a diagnosis of asthma and prescribed the Veteran with 40 mg of Qvar to be taken twice daily. See March 19, 2011, pulmonary function laboratory report from Dr. C.

The Veteran underwent a pulmonary function test with his VA physician in May 2011. See May 2011 VA pulmonary function laboratory report. The test recorded an FEV-1 of 91-percent predicted and an FEV-1/FVC of 98-percent predicted. A subsequent VA pulmonary function test found an FEV-1 of 97 percent-predicted and an FEV-1/FVC of 97-percent predicted. See July 2011 VA pulmonary function laboratory report.

A VA respiratory examination took place in June 2011. See June 2011 Compensation and Pension Examination Report. The Veteran reported using an albuterol inhaler as needed and occasionally using Loratadine (10mg) daily as needed. However, she denied using oral or parenteral steroids or antibiotics. In addition, she reported experiencing asthma attacks at least monthly.

In July 2011, the Veteran contacted her VA provider by telephone with complaints of asthma. See July 2011 VA triage note. She reported that she had Prednisone from a private physician, but needed a prescription. Id.

The Veteran presented to the primary care clinic with complaints of leg pain in September 2011. See September 2011 VA primary care note. She was administered an injection of Kenalog-40. See also July 2011 VA administrative note.

Pursuant to the Board's January 2017 remand, the RO obtained an addendum opinion to determine, in part, whether the Veteran was prescribed Prednisone for her asthma. See January 2017 Medical Opinion Disability Benefits Questionnaire. The examiner confirmed that the Veteran was prescribed Prednisone in September 2010 specifically for CTS and not for bronchial asthma. In addition, the examiner stated that she was prescribed Prednisone by a private pneumologist in 2011. The examiner also stated that she has continued to take the same prescription daily for her bronchial asthma pursuant to VA prescription. The examiner based her conclusions on a review of medical records and an interview with the Veteran by phone.

Upon review of the record, the Board finds that the preponderance of the evidence is against a rating in excess of 30 percent for asthma prior to December 2, 2011. The record reflects that the Veteran was prescribed corticosteroids during the period of appeal. However, none of the corticosteroids were systemic steroids prescribed for the Veteran's asthma. DC 6602 clearly makes a distinction between the intermittent or daily use of systemic corticosteroids and the intermittent or daily use of inhaled corticosteroids. LaPointe v. Nicholson, 21 Vet. App. 411 (2006). Beclomethasone, or Qvar, is an inhaled corticosteroid and not a systemic corticosteroid. See WebMD.com, Inhaled Corticosteroids for Long-Term Control of Asthma, http://www.webmd.com/asthma/inhaled-corticosteroids-for-long-term-control-of-asthma (August 21, 2005); see also 38 C.F.R. § 20.903 (b)(2); Sykes v. Apfel, 228 F.3d 259, 272 (3d Cir. 2000) (addressing administrative notice to apply knowledge of commonly acknowledged facts, plus technical or scientific facts that are within the agency's area of expertise). While Prednisone is a systemic corticosteroid, it was prescribed for the Veteran's unrelated CTS, not her asthma. See January 2017 Medical Opinion Disability Benefits Questionnaire. Similarly, although the Veteran received injections of Kenalog-40, a systemic corticosteroid, during the period of appeal, they were also administered in connection with unrelated conditions. 

Further, private and VA pulmonary function tests during the period of appeal resulted in an FEV-1 or FEV-1/FVC far above 55-percent predicted. See March 19, 2011, FVC test report from Dr. C; May 2011 and July 2011 VA pulmonary function laboratory reports. The Board finds no evidence to doubt the credibility of the Veteran's physicians or examiners. Finally, the Board acknowledges the Veteran's report during the June 2011 VA examination that she experienced asthma attacks at least monthly. However, there is no evidence that the Veteran saw a physician to obtain required care for these attacks. Accordingly, the criteria for a rating in excess of 30 percent for asthma prior to December 2, 2011, have not been met. 38 C.F.R. § 4.97.

The Board also notes that it has considered the applicability of the benefit-of-the-doubt doctrine. However, because the preponderance of the evidence is against the Veteran's claim for an increased rating for asthma, that doctrine is not helpful to the Veteran. See 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).






 (CONTINUED ON NEXT PAGE)



ORDER

A rating in excess of 10 percent for hyperkeratosis of the bilateral heels is denied.

A rating of 10 percent for bilateral foot injuries associated with hyperkeratosis of the bilateral heels is granted.

A rating of in excess of 30 percent for asthma prior to December 2, 2011, is denied.



____________________________________________
CAROLINE B. FLEMING
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs