# United States Court of Appeals for the Federal Circuit

---

**PAUL JOHNSON, JR.,**
*Claimant-Appellee*

**v.**

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellant*

---

2016-2144

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-2778, Judge William Greenberg, Senior Judge Bruce E. Kasold, Senior Judge Lawrence B. Hagel.

---

Decided: July 14, 2017

---

DORIS HINES, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, argued for claimant-appellee. Also represented by LAUREN J. DREYER; BENJAMIN SCHLESINGER, Atlanta, GA; PATRICK AARON BERKSHIRE, BARTON F. STICHMAN, National Veterans Legal Services Program, Washington, DC.

EMMA BOND, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellant. Also represented by

BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., SCOTT D. AUSTIN; JONATHAN KRISCH, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

———————————

Before DYK, BRYSON, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

The Secretary of Veterans Affairs (Secretary) appeals a decision of the Court of Appeals for Veterans Claims (Veterans Court) holding that Diagnostic Code 7806 under 38 C.F.R. § 4.118 (DC 7806), a diagnostic code for rating disabilities for a skin condition, unambiguously defines a topical corticosteroid treatment as "systemic therapy" rather than "topical therapy." The Board of Veterans' Appeals (Board) had found that Paul Johnson, Jr.'s (Johnson) skin condition affected only a limited area of his body, and his topical corticosteroid treatment of that area did not qualify as a "systemic therapy" under DC 7806. Because we agree with the Secretary that the Veterans Court gave an overly broad reading of the term "systemic therapy" in DC 7806 that encompasses any and all forms of topical corticosteroid treatment, we reverse and remand.

## BACKGROUND

Johnson served honorably in the U.S. Army from April 6, 1970, until December 3, 1971. In early 2008, the Regional Office (RO) of the Department of Veterans Affairs (VA) granted Johnson a 30% rating for posttraumatic stress disorder (PTSD), and a 10% rating for tinea corporis, a skin condition which Johnson described as jungle rot under DC 7806, with both ratings effective on September 5, 2007. Johnson sought review before the Board, which increased his PTSD rating to 70% and remanded to the RO for further factual development on his skin condition. After several rounds of review before

the Board and RO, the Board denied Johnson's request for an increased rating for tinea corporis in April 2014.[1]

The Board noted that Johnson received several VA examinations for his skin condition in February 2008, October 2010, November 2010, and November 2013. J.A. 98–101. Although Johnson reported "scratching a lot and getting mild abrasions," the examinations detected "no systemic manifestations due to a skin disorder," and his skin condition "covered less than 5 percent of [his] total body area and is not on any exposed area." J.A. 101. He reported that he "treated his skin condition with constant or near-constant topical corticosteroids and other topical medications," such as triamcinolone, miconazole, and ketoconazole creams. *Id.* The VA examiner concluded, however, that his skin condition "did not cause scarring or disfigurement of the head, face or neck," it "did not impact [his] ability to work," and "there were no other pertinent physical findings, complications, signs and/or symptoms." *Id.*

The Board also recognized that Johnson could receive a rating of 30 percent for his skin condition, if he could show sufficient systemic therapy under DC 7806. J.A. 102. DC 7806 provides for four different disability ratings (60, 30, 10, and 0 percent) based on the percentage of the body or exposed area of the veteran that is affected by the skin condition or the frequency of required "systemic" or "topical" therapy. These ratings are as follows:

> More than 40 percent of the entire body or more than 40 percent of exposed areas affected, or; constant or near-constant *systemic therapy such as corticosteroids or other immunosuppressive drugs*

---

[1]    Johnson separately received a rating of total disability based on individual unemployability (TDIU) in March 2011, and that rating is not on appeal.

*required during the past 12-month peri-*
*od* . . . 60 [percent]

20 to 40 percent of the entire body or 20 to 40 per-
cent of exposed areas affected, or; *systemic therapy*
*such as corticosteroids or other immunosuppres-*
*sive drugs required for a total duration of six*
*weeks or more*, but not constantly, during the past
12-month period . . . 30 [percent]

At least 5 percent, but less than 20 percent, of the
entire body, or at least 5 percent, but less than 20
percent, of exposed areas affected, or; *intermittent*
*systemic therapy such as corticosteroids or other*
*immunosuppressive drugs required for a total du-*
*ration of less than six weeks* during the past 12-
month period . . . 10 [percent]

Less than 5 percent of the entire body or less than
5 percent of exposed areas affected, and; *no more*
*than topical therapy required* during the past 12-
month period . . . 0 [percent]

38 C.F.R. § 4.118 (emphases added); J.A. 7. DC 7806 thus
provides that a skin condition requiring at least some
amount of "systemic" therapy receives a higher rating
than a condition requiring "no more than topical" therapy,
which receives a 0 percent rating. For a rating of 30
percent, for example, the veteran must show that 20–40
percent of the veteran's entire body was affected, 20–40
percent of the veteran's exposed areas were affected, or
that the veteran received "systemic therapy" for six weeks
or more over the past twelve months. *Id.*

The Board found that, while Johnson had been grant-
ed a 10 percent rating for his skin condition, he did not
meet the criteria for a 30 percent rating because "[t]he
medical evidence does not show that at least 20 percent of
[his] entire body, or 20 percent of [his] exposed areas are
affected." J.A. 102. Although Johnson "treated his skin

condition with constant or near-constant topical cortico-steroids and other topical medications," the Board found that this use was not "systemic therapy" because he "treats his skin condition with topical creams." J.A. 101–02. It also found that Johnson "has not had systemic therapy for a total duration of six weeks or more during any 12-month period." J.A. 102–03.

The Veterans Court reversed, finding that the plain meaning of DC 7806 was unambiguous and requires that "systemic therapy, as used therein, includes the use of corticosteroids without any limitation to such use being oral or parenteral as opposed to topical." J.A. 3, 7. The Veterans Court found that DC 7806 "explicitly mentions corticosteroids as an example of 'systemic therapy' and does not further distinguish between different types of corticosteroid application." J.A. 7. It found that topical and systemic treatments were not mutually exclusive and that a topical therapy could have a systemic effect. J.A. 8. It also rejected the Secretary's position that the use of "topical" corticosteroids was "no more than topical thera-py" and found that the use of any corticosteroids qualified as systemic therapy because topical therapy was applica-ble only "when the veteran is not undergoing corticoster-oid treatment." J.A. 9–10.

In other words, the Veterans Court read the phrase "systemic therapy such as corticosteroids" as unambigu-ously encompassing any topical application of corticoster-oids for treating a skin condition, in addition to a therapy that impacts a patient's entire body system, such as when a drug is administered orally or parenterally. The Veter-ans Court reasoned that the phrase "systemic therapy such as corticosteroids" converted the meaning of "system-ic therapy" to be any kind of therapy that uses cortico-steroids, whether it is administered topically, orally, or parenterally. We have jurisdiction under 38 U.S.C. § 7292(c).

DISCUSSION

I.

"In reviewing a decision of the Veterans Court, this court is vested with authority to 'decide all relevant questions of law, including interpreting constitutional and statutory provisions.'" *Hogan v. Peake*, 544 F.3d 1295, 1297 (Fed. Cir. 2008) (quoting 38 U.S.C. § 7292(d)(1)). "We review statutory and regulatory interpretation de novo." *Id.*

II.

The Secretary argues that the Veterans Court erred by interpreting DC 7806's exemplary reference to "corticosteroids" as a type of "systemic therapy" to mean that DC 7806 unambiguously defined all forms of administering corticosteroids—including topical application—to be "systemic therapy." He contends that this finding would allow a veteran with a skin condition affecting less than 5 percent of his body or his exposed area, otherwise entitled to a rating of 0 percent, to increase his rating to 60 percent by using a topical over-the-counter hydrocortisone treatment constantly or near constantly.

We agree with the Secretary that the Veterans Court incorrectly read DC 7806 as unambiguously elevating any form of corticosteroid treatment, including any degree of *topical* corticosteroid treatment, to the level of "systemic therapy." The structure and content of DC 7806 make clear that it contemplates two types of therapy, "systemic therapy" and "topical therapy," as the operative terms of the diagnostic code, not the exemplary reference ("such as") to corticosteroids. The use of "such as" in DC 7806 does not mean that all forms of treatment with "corticosteroids and other immunosuppressive drugs," no matter how narrowly localized in their impact, count as "systemic therapy." DC 7806 draws a clear distinction between "systemic therapy" and "topical therapy" as the operative

terms of the diagnostic code. The code provides that a veteran who requires at least some form of "systemic therapy" receives a rating of 10 percent or higher, but one who requires "*no more than topical therapy*" receives a rating of 0 percent. The Veterans Court's analysis of DC 7806 did not take into account this last provision in the code, which governs ratings for treatment with a "topical therapy" as opposed to a "systemic therapy."

Consideration of the accepted meanings of *systemic*, *topical*, and *therapy* underscores our conclusion. Both parties agree that the plain meaning of these terms can be ascertained from *Dorland's Illustrated Medical Dictionary*. J.A. 4; Appellant Br. 21; Appellee Br. 25; *see also O'Bryan v. McDonald*, 771 F.3d 1376, 1380 (Fed. Cir. 2014) (consulting *Dorland's* in a disability case). Dorland's defines systemic as "pertaining to or affecting the body as a whole." J.A. 4 (citing *Dorland's Illustrated Medical Dictionary* 1865 (32d ed. 2012)). It defines topical as "pertaining to a particular surface area, as a topical antiinfective applied to a certain area of the skin and affecting only the area to which it is applied." J.A. 4 (citing *Dorland's* at 1940). Lastly, it defines therapy as "treatment of disease." Appellee Br. 25 (citing *Dorland's* at 1911). Johnson does not dispute that these definitions apply to systemic therapy and topical therapy. Appellee Br. 25–26. Putting these definitions together, systemic therapy means "treatment pertaining to or affecting the body as a whole," whereas topical therapy means "treatment pertaining to a particular surface area, as a topical antiinfective applied to a certain area of the skin and affecting only the area to which it is applied." Nothing in DC 7806 displaces the accepted understandings of systemic therapy and topical therapy to permit a topical

therapy that affects "only the area to which it is applied" to count as a systemic therapy under that code.[2]

We note that the parties agree that a topical corticosteroid treatment could conceivably be "administered on a large enough scale" to affect the body as a whole, which could fit the definition of systemic therapy. Appellee Br. 16–19, 24–26, 33; Reply Br. 5–6. But the mere possibility that the use of a topical corticosteroid could amount to systemic therapy *in some cases* does not mean all applications of topical corticosteroids mean systemic therapy, particularly if those uses of topical corticosteroids affect only the area to which they are applied.[3] As explained

---

[2] The Veterans Court below compared DC 7806 to another diagnostic code, DC 6602, which is the Schedule for Rating Disabilities—Respiratory System. J.A. 8–9; 38 C.F.R. § 4.97 (DC 6602). The Veterans Court found that DC 6602 shows that the Secretary knew how to define "systemic" in a more limited way to cover only oral or parenteral (other than through the oral cavity) corticosteroids but did not do the same for DC 7806. J.A. 9. We disagree. DC 6602 draws a distinction between (1) "systemic (oral or parenteral) high dose corticosteroids" that affect the body as a whole, and (2) inhaled medication that has a more localized effect in the lungs. Appellant Br. 25–26 (citing 38 C.F.R. §§ 4.97, 4.118). DC 7806, on the other hand, distinguishes between systemic and topical therapy based on whether that therapy affects the body as a whole or the localized area of the skin to which treatment is applied. Because DC 6602 covers respiratory conditions and DC 7806 covers skin conditions, we agree with the Secretary that the different contexts of the two codes logically explains the differences in terminology used for the conditions discussed therein.

[3] The Secretary also argues that the Veterans Court erroneously considered extra-record evidence of a

above, we agree with the Secretary that the use of *topical* corticosteroids does not automatically mean *systemic therapy* because DC 7806 distinguishes between *systemic* and *topical* therapy.[4]

Johnson also argues that the Secretary's position mixes "drug administration with drug therapy." Appellee Br. 14–15, 32. Johnson agrees that the administration of corticosteroids can be oral, parenteral, or topical, but he contends that these types of corticosteroids are not therapies, but routes of administration. This argument is not persuasive. Although topical therapy must be administered to the skin, DC 7806 distinguishes it from systemic therapy based on how much of the body is affected by the treatment, not the route of administration. Reply Br. 8.

---

nicotine patch as an example of a topical treatment with a systemic effect. J.A. 8. He contends that the Veterans Court improperly took judicial notice of the nicotine patch, but we do not address this issue because the nicotine patch is immaterial to the outcome in this case. The mere possibility that a nicotine patch could affect or pertain to the body as a whole does not impact the outcome here in which there is no dispute that Johnson's topical application of a corticosteroid had no impact on his system as a whole.

[4] The parties also raise arguments based on previous versions of DC 7806, new proposed amendments to DC 7806, an October 2015 revision of the VA's Adjudication Procedures Manual, and a Disability Benefits Questionnaire that the VA uses to examine veterans during medical examinations. We do not address these arguments because we find that DC 7806 is unambiguous and draws a clear distinction between systemic therapy and topical therapy. For the same reasons, we do not address the parties' arguments on whether we should defer to the agency's interpretation of DC 7806.

DC 7806 does not refer to drug administration; it differentiates between systemic and topical therapy, which address how much of the body the therapy affects. *Id.* Johnson also concedes that "therapy" is "the treatment of a disease." Appellee Br. 25. Thus, we reject this argument.

We also note that the alternative method of assigning a rating under DC 7806, i.e., based on the amount of skin or exposed skin affected, supports this interpretation of systemic and topical. Both methods distinguish the severity of a condition based on how much of the body is affected by the treatment.

We agree with the Secretary that the use of a topical corticosteroid could be considered either systemic therapy or topical therapy based on the factual circumstances of each case. Reply Br. 5–6. Johnson did not challenge the Board's factual findings that he treated his skin condition with topical creams and did not receive systemic therapy, as that term is commonly understood. J.A. 97, 101–02; Appellee Br. 14–17, 37; *see also* Oral Argument at 8:35–9:20 (counsel for the Secretary explaining that Johnson's only argument to the Veterans Court was that any usage of corticosteroids is automatically systemic therapy under DC 7806), 30:15–31:20 (counsel for Johnson declining to argue that Johnson's topical application could have had a broad, systemic effect), http://www.cafc.uscourts.gov/oral-argument-recordings?title=&field_case_number_value=16-2144&field_date_value2%5Bvalue%5D%5Bdate%5D=.

Given that Johnson did not challenge the Board's factual findings that his use of topical corticosteroids affected only the area to which he applied treatment and did not pertain to or affect his body as a whole, we credit those findings. We reverse the holding of the Veterans Court and remand for it to reinstate the Board's otherwise unchallenged factual findings.

CONCLUSION

For the aforementioned reasons, we reverse and re-mand for further consideration in light of this opinion.

**REVERSED AND REMANDED**

COSTS

No costs.