Citation Nr: 1808271 
Decision Date: 02/08/18 Archive Date: 02/20/18

DOCKET NO. 13-21 030A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to service connection for chronic fatigue syndrome (CFS).

2. Entitlement to service connection for substance abuse.

3. Entitlement to service connection for a psychiatric disorder, to include posttraumatic stress disorder (PTSD), major depressive disorder, and sleep disturbance.

4. Entitlement to an initial compensable rating prior to June 9, 2010, and to a rating in excess of 10 percent thereafter, for atopic dermatitis.

5. Entitlement to service connection for a cervical disorder.

6. Entitlement to service connection for a gastrointestinal condition.

7. Entitlement to service connection for a right foot disorder.

8. Entitlement to service connection for a left foot disorder.
9. Entitlement to a total disability rating based on individual unemployability due to service connected disabilities (TDIU). 


REPRESENTATION

Veteran represented by: Douglas E. Sullivan, Attorney at Law


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

D. Jimerfield, Associate Counsel


INTRODUCTION

The Veteran served on active duty from August 1992 to January 1993 and from March 1993 to October 1994.

This matter is before the Board of Veterans' Appeals (Board) on appeal from August 2009 and January 2011 rating decisions of a Department of Veterans Affairs (VA) Regional Office (RO).

The Board notes that, in May 2013, the RO granted a rating of 10 percent for the Veteran's skin disability as of June 9, 2010. As she is presumed to be seeking the maximum available benefit for a disability, the entirety of such claim remains before the Board. See AB v. Brown, 6 Vet. App. 35, 38 (1993); see also Murphy v. Shinseki, 26 Vet. App. 510, 514 (2014).

In July 2017, the Board remanded the claims on appeal to schedule the Veteran for a Board hearing. Then, in October 2017, the Veteran had a Board hearing.

The Board also notes that the record was held open for 60 days for submission of additional evidence after the October 2017 Board hearing. In addition, in an October 2017 correspondence, the Veteran waived initial RO consideration of evidence received after the filing of her substantive appeals. See 38 C.F.R. § 20.1304(c). 

Recently, in January 2018, the Veteran perfected an appeal as to the three issues listed in a December 2017 statement of the case. As he requested a Board video hearing in connection with the appeal, these issues will be addressed in a future Board decision after the hearing is held.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C. § 7107(a)(2).

The decision below addresses the issue of entitlement service connection for CFS, substance abuse and a psychiatric disorder. The remaining issues are addressed in the remand section.


FINDINGS OF FACT

1. At the October 2017 Board hearing, the Veteran's representative requested withdrawal of the appeal of the issue of entitlement to service connection for CFS.

2. At the October 2017 Board hearing, the Veteran's representative requested withdrawal of the appeal of the issue of entitlement to service connection for substance abuse.

3. The Veteran has PTSD as a result of in-service personal assault stressors.


CONCLUSIONS OF LAW

1. The criteria for withdrawal of the appeal of the issue of entitlement to service connection for CFS have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

2. The criteria for withdrawal of the appeal of the issue of entitlement to service connection for substance abuse have been met. 38 U.S.C. § 7105(b)(2), (d)(5) (2012); 38 C.F.R. § 20.204 (2017).

3. The criteria for service connection for PTSD, but no other psychiatric disorder, have been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has limited the discussion below to the relevant evidence required to support its finding of fact and conclusion of law, as well as to the specific contentions regarding the case as raised directly by the Veteran and those reasonably raised by the record. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015); Robinson v. Peake, 21 Vet. App. 545, 552 (2008).

I. Withdrawn Claims

During the October 2017 Board hearing, prior to promulgation of a Board decision in the appeal, the Veteran's representative indicated that the Veteran wishes to withdraw her appeals of the issues of entitlement to service for CFS and substance abuse.

Under 38 U.S.C. § 7105, the Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. A substantive appeal may be withdrawn on the record during a hearing or in writing at any time before the Board promulgates a decision. 38 C.F.R. § 20.204. With regard to the issues withdrawn by the Veteran, there remain no allegations of errors of fact or law for appellate consideration. Accordingly, the Board does not have jurisdiction to review the appeal of these issues, and they are dismissed. 38 U.S.C. § 7105(b)(2), (d)(5).

II. Service Connection-Psychiatric Disorder

Legal Criteria

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. § 1110, 38 C.F.R. § 3.303. "To establish a right to compensation for a present disability, a veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"-the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).

Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a) (i.e., under the criteria of DSM); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f). 

There are special considerations for PTSD claims predicated on a personal assault. The pertinent regulation, 38 C.F.R. § 3.304(f)(5), provides that PTSD based on a personal assault in service permits evidence from sources other than the Veteran's service records which may corroborate his or her account of the stressor incident. Examples of such evidence include, but are not limited to: records from law enforcement authorities, rape crisis centers, mental health counseling centers, hospitals, or physicians; pregnancy tests or tests for sexually transmitted diseases; and statements from family members, roommates, fellow service members, or clergy. 38 C.F.R. § 3.304(f)(5). In addition, an after-the-fact medical opinion can serve as the credible supporting evidence of the stressor. 38 C.F.R. § 3.304(f)(5); Menegassi v. Shinseki, 638 F.3d 1379, 1382-83 (Fed. Cir. 2011).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107, 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Facts and Analysis

The Veteran contends that she has PTSD due to her military service. In this regard, during the October 2017 Board hearing, the Veteran reported witnessing a fellow service member's death during training in Germany in October or November 1993. In addition, the Veteran reported being sexually assaulted during basic training. She further reported contracting chlamydia as a result of the assault. Thereafter, in December 2017, the Veteran's representative submitted two documents which list two service members who were killed in non-hostile incidents in Germany in March and April 1993. 

The Veteran's STRs show that she was diagnosed with chlamydia in June 1993, two months after the start of her second period of active duty service. Another STR from June 1993 contains a report from the Veteran of experiencing a reduced desire to eat. Thereafter, her service personnel records (SPRs) reflect that she was barred from reenlisting due to misconduct.

The Veteran was afforded a psychiatric examination in regard to this claim in May 2012. The examiner diagnosed the Veteran with PTSD and major depressive disorder. The examiner also noted that, while the Veteran had experienced trauma prior to her enlistment, she excelled in athletics and was a distinguished honor graduate of a chemical operations training course during her military career. The examiner further noted that the Veteran lost her composure later in her military career and has not been able to recover since. The examiner attributed this deterioration in the Veteran's mental health to witnessing a fellow service-member die during training.

Thereafter, in May 2013, the Veteran's treating psychiatrist submitted a letter that was written in April 2013. The psychiatrist reported that she was treating the Veteran for PTSD and major depressive disorder. She further reported that it is more likely than not that the Veteran's PTSD is a result of military sexual trauma.

Upon review of the medical and lay evidence, the Board finds that it is sufficient to warrant a grant of service connection for PTSD. In this regard, both the May 2012 examiner and the Veteran's treating psychiatrist diagnosed her with PTSD. Furthermore, the May 2012 examiner's findings support the conclusion that the Veteran's psychiatric condition deteriorated during her military service. While this examiner attributed this to witnessing a fellow service member's death, such incident has not yet been corroborated. However, the Veteran's treating psychiatrist has attributed her PTSD to military sexual trauma. Furthermore, the Veteran's STRs and SPRs contain support for this examiner's conclusion. Specifically, the Veteran was diagnosed with chlamydia during service shortly after she would have been in training. In addition, her SPRs show declining in performance to the point where she was no longer eligible to reenlist. This evidence is sufficient, credible supporting evidence to corroborate the Veteran's reported in-service stressor. 38 C.F.R. § 3.304(f)(5); Menegassi, 638 F.3d at 1382-83. Therefore, when reasonable doubt is resolved in the Veteran's favor, the Board finds that she has been diagnosed with PTSD as a result of an in-service stressor. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 54.

However, while the Veteran has also been diagnosed with additional psychiatric conditions, including major depressive disorder and sleep disturbance, no similarly positive nexus opinion has been provided in regard to such disorders. Therefore, service connection is not warranted for additional psychiatric conditions.

Therefore, in light of the evidence of establishing an in-service stressor, as well as the medical evidence providing a current diagnosis of PTSD linked to the Veteran's in-service stressor, the Board concludes that service connection for PTSD is warranted.

ORDER

The appeal of the issue of entitlement to service connection for CFS is dismissed.

The appeal of the issue of entitlement to service connection for substance abuse is dismissed.

Service connection for PTSD is granted.


REMAND

The Veteran is seeking higher ratings for dermatitis. In this regard, the Veteran's representative stated that hydroxyzine prescribed to treat this condition constitutes systemic therapy such as corticosteroids or other immunosuppressive drugs. Post-service VA treatment records associated with the file in May 2010 reflect that the Veteran was prescribed an oral dosage of such medication in October 2009. In addition, post-service VA treatment records reflect that her skin disorder has worsened since the last examination of this condition. Specifically, an April 2017 VA treatment record reflects that the Veteran was prescribed an oral dosage of prednisone to treat a severe flare-up of a skin condition because it was not responding to topical steroids. A November 2017 VA treatment record reflects that she is still taking this medication. Thus, the Veteran should be afforded new VA examination to assess the current extent and severity of her service-connected skin disability. See Snuffer v. Gober, 10 Vet. App. 400 (1997).

The Board notes that, pursuant to the recent decision of the United States Court of Appeals for the Federal Circuit, for purposes of Diagnostic Code 7806, systemic therapy does not typically include the use of topical cream, even if the topical cream is a corticosteroid. Johnson v. Shulkin, 862 F.3d 1351, 1355 (Fed. Cir. 2017).

The Veteran also contends that she has a cervical disorder which is related to her military service. She was afforded an examination in regard to this claim in June 2009. The examiner noted abnormal cervical cells were found during testing in August 2008 and that she had human papillomavirus. The examiner found that the Veteran's abnormal cervical cells were at least as likely as not related to her in-service contraction of chlamydia. Thereafter, this examiner provided an addendum opinion in July 2009. The examiner reported that testing done during the June 2009 examination showed no pathology and, therefore, the Veteran did not have a current diagnosis at such time. The Veteran was examined again in regard to this claim in September 2012. This examiner reported that the Veteran was diagnosed with cervical dysplasia in 2008, but did not offer an etiology of such disorder. Subsequently, the Veteran was afforded another examination in regard to this claim in January 2013. The examiner noted a 2008 diagnosis of cervical dysplasia and a 2012 diagnosis of leiomyomatous uterus. However, this examiner did not offer a finding as to direct service connection for such conditions. Thus, another examination is necessary to obtain such an opinion regarding the Veteran's diagnosed cervical disorders.

The Veteran is also seeking service connection for a gastrointestinal disorder. Her STRs show that she was treated for pain in her right lower abdomen, diarrhea, and vomiting during service. Following her discharge, the Veteran's VA treatment records reflect that she has been treated for diarrhea and vomiting. Such records also show that she has been diagnosed with irritable bowel syndrome, heartburn, reflux, gastritis, hernia, and gastrointestinal hemorrhoids. However, findings as to the etiology of these conditions have yet been obtained. Therefore, the Board finds a VA examination is necessary to determine the relevant diagnoses experienced by the Veteran during the period on appeal and their etiologies.

In addition, the Veteran is seeking service connection for bilateral foot disorders. She reported in a June 2010 statement that she had pain in her feet during service and that the conditions have since gotten progressively worse. The Veteran's STRs show that she was noted to have bilateral pes planus during an April 1992 induction examination. During service, she reported experiencing pain in both of her feet in June, September, and November of 1993. During treatment in June 1994, the Veteran was noted to walk with an antalgic gait. Post-service VA treatment records associated with the file in June 2016 reflect that she sought treatment for chronic foot pain in December 1996. She was examined in regard to these claims in June 2010. The examiner reported that the Veteran had surgery to remove bunions and repair hammertoes on both feet. However, the examiner did not offer an etiology for these conditions. An addendum obtained in March 2011 noted that the Veteran's foot condition was not present until 1993, but concluded that the Veteran's foot disabilities were not caused by her service-connected left hip. The examiner did not offer findings as to direct service connection. Thereafter, another examination was provided in regard to this claim in May 2012. The examiner reported diagnoses of hammer toes and hallux valgus of the bilateral feet. The examiner found that the Veteran's current foot disabilities are unrelated to her in-service foot conditions and service-connected left hip disability. The examiner also stated that the Veteran's bilateral foot problems could be genetically acquired conditions. However, these findings were made prior to the association of the December 1996 post-service VA treatment records noted above with the file. Thus, a medical opinion should be obtained in regard to the etiologies of the Veteran's current foot disorders with the benefit of such additional treatment records. 

In addition, the Veteran's claim for TDIU is intertwined with the remanded claims. The Board also notes that the record does not contain a VA Form 21-8940 Veteran's Application for Increased Compensation Based on Unemployability. While on remand, the RO should request the Veteran complete and return such form.

Finally, while on remand updated VA treatment records should be associated with the file.

Accordingly, these issues are REMANDED for the following actions:

1. Obtain complete VA treatment records from December 2017.

2. Provide the Veteran with the TDIU application VA Form 21-8940 and ask her to complete and return it.

3. After completing the records development indicated above, schedule the Veteran for an appropriate VA examination to determine the current severity of her service-connected dermatitis. The examiner should also comment on whether systemic therapy such as corticosteroids or other immunosuppressive drugs has been prescribed during the period on appeal and, if so, the time frame(s) associated with such treatment.

A detailed rationale for any opinion offered should be provided.

4. Schedule the Veteran for an examination by an appropriate medical professional to determine the nature and etiology of all cervical disorders experienced by the Veteran. The entire claims file should be reviewed by the examiner.

The examiner is to identify all cervical disorders experienced by the Veteran during the period on appeal. For each diagnosed disorder, provide an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that each identified condition had onset during or is otherwise related to service, to include as due to the Veteran's in-service contraction of chlamydia.

A detailed rationale for any opinion offered should be provided.

5. Schedule the Veteran for an examination by an appropriate medical professional to determine the nature and etiology of all gastrointestinal disorders experienced by the Veteran. The entire claims file should be reviewed by the examiner.

The examiner is to identify all gastrointestinal disorders experienced by the Veteran during the period on appeal. For each diagnosed disorder, provide an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that each identified condition had onset during or is otherwise related to service. The examiner should consider the gastrointestinal symptoms noted during her military service.

A detailed rationale for any opinion offered should be provided.

6. Submit the claims file to an appropriate examiner. The entire claims file and a copy of this Remand must be made available to the examiner. The need for an additional examination of the Veteran is left to the discretion of the clinician selected to write the addendum opinion. Following a review of the full record, the examiner should diagnose all foot disorders present since October 2009, regardless of whether any such disorder has subsequently resolved. 

The examiner is to determine whether each foot disorder is a disease or defect. The terms "disease" and "defect" must be interpreted as being mutually exclusive. For VA legal purposes, the term "disease" is broadly defined as any deviation from or interruption of the normal structure or function of any part, organ, or system of the body that is manifested by a characteristic set of symptoms and signs and whose etiology, pathology, and prognosis may be known or unknown. The term "defect" is defined as structural or inherent abnormalities or conditions that are more or less stationary in nature. Defects are static conditions that are incapable of improvement or deterioration, whereas diseases are capable of such progression.

(a) For all foot disorders deemed a congenital disease or acquired disorder other than pes planus, the presumption of soundness applies. As such, the examiner should explain whether the disorder clearly and unmistakably pre-existed service.

(i) If this issue is debatable where reasonable minds could disagree, the examiner is to provide an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) the foot disorder is related to service.

(ii) If there is clear and unmistakable evidence that the disorder pre-existed service, the examiner should opine as to whether the disorder clearly and unmistakably was not aggravated during service, to include as due to in-service chemical exposures. Aggravation is an increase in disability beyond the natural progress of the disease or temporary flare-up.

(b) For each foot disorder deemed a congenital defect, the examiner is to provide an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) subject to a superimposed disease or injury during service.

A detailed rationale for any opinion offered should be provided.

7. Finally, readjudicate the claims remaining on appeal. If all benefits sought are not granted in full, issue a supplemental statement of the case and return the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112.




______________________________________________
RYAN T. KESSEL
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs