﻿Citation Nr: AXXXXXXXX
Decision Date: 12/11/18 Archive Date: 12/11/18

DOCKET NO. 180727-289
DATE: December 11, 2018
ORDER
A 30 percent disability rating, but no higher, is granted for service-connected atopic dermatitis from November 13, 2013 to June 21, 2018.
FINDINGS OF FACT
1. The Veteran’s atopic dermatitis covers at least 20 percent but less than 40 percent of the Veteran’s exposed areas for the entire period on appeal. 
2. At no time during the appeal period has the Veteran’s atopic dermatitis covered more than 40 percent of the entire body or more than 40 percent of exposed areas affected; nor is there any evidence that the Veteran has been prescribed or required to use constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs during the previous 12-month period. 
CONCLUSION OF LAW
The criteria for a disability rating of 30 percent, but no higher, for service-connected atopic dermatitis have been met from November 13, 2013 to June 21, 2018. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.2, 4.3, 4.7, 4.118, Diagnostic Codes 7800-7806 (2017 & August 13, 2018). 
REASONS AND BASES FOR FINDINGS AND CONCLUSION
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.
The Veteran served on active duty in the United States Army from September 1983 to May 1985. The current appeal stems from a claim for increase received by VA on November 13, 2014. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the June 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested the evidence submission review lane, allowing him 90 days to submit evidence pertinent to his claim. 
The Board notes that in an October 2018 Correspondence, the Veteran’s representative raised the issue of whether there was clear and unmistakable error in the March 25, 1986 rating decision that granted service connection for atopic dermatitis and assigned the initial rating. Effective March 24, 2015, VA amended its regulations to require that all claims governed by VA’s adjudication regulations be filed on a standard form. Accordingly, although the Veteran selected the evidence submission review lane, this contention amounts to a claim for benefits outside of the appeal period, rather than a submission of evidence, and should be submitted on a standard form. 
1. Entitlement to an increased rating for service-connected atopic dermatitis from November 13, 2013 to June 21, 2018
The Veteran contends that a rating in excess of 10 percent prior to December 8, 2014 and in excess of 30 percent thereafter is warranted for his service-connected atopic dermatitis. Specifically, he asserts that his treatment is equivalent to near-constant systemic therapy and that dermatitis covered 20 to 40 percent of the Veteran’s body area during the entire period on appeal. See October 2018 Correspondence. 
As an initial matter, the Board notes that when dealing with an increased rating claim, the appropriate period on appeal dates to one year prior to the date of the Veteran’s claim, if an increase in disability is ascertainable during the year prior to the date the claim was received. Hart v. Nicholson, 21 Vet. App. 505, 509 (2007). Here, the Veteran applied for an increased rating on November 13, 2014. As such, the issue before the Board is entitlement to an increased rating for atopic dermatitis beginning one year prior to the claim for an increase, or November 13, 2013.
The Veteran’s atopic dermatitis has been evaluated under Diagnostic Code 7806. 38 C.F.R. § 4.118. Initially, the Board notes that Diagnostic Code 7806 provides for a rating under disfigurement of the head, face, or neck; scars; or dermatitis, depending on the predominant disability. As there is no evidence of disfigurement or scarring related to the Veteran’s atopic dermatitis, Diagnostic Code 7806 is found most appropriate and beneficial to the Veteran in rating his condition. 
In evaluating skin and scar residuals, the Board notes that while the Veteran’s appeal was pending, changes were made to 38 C.F.R. § 4.118, Diagnostic Code 7806. Effective August 13, 2018, VA amended its regulations governing skin disabilities. VA’s intent is that the claims pending prior to the effective date will be considered under both old and new rating criteria, and whatever criteria is more favorable to the veteran will be applied. For applications filed on or after the effective date, only the new criteria will be applied. 83 Fed. Reg. 32,592 (July 13, 2018).
Under the pre-August 2018 rating criteria, Diagnostic Code 7806 provided for a 10 percent rating where there is involvement of at least 5 percent, but less than 20 percent, of the entire body or at least 5 percent, but less than 20 percent, of exposed areas affected, or; intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs required for a total duration of less than six weeks during the past 12-month period. A 30 percent rating is assigned for dermatitis or eczema affecting 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas, or for dermatitis or eczema that requires systemic therapy, such as corticosteroids or other immunosuppressive drugs, for a total duration of six weeks or more, but not constantly, during the past 12-month period. A 60 percent disability rating is assigned for dermatitis or eczema, affecting more than 40 percent of the entire body or more than 40 percent of exposed areas, or for dermatitis or eczema that requires constant or near-constant systemic therapy, such as corticosteroids or other immunosuppressive drugs, during the past 12-month period. 38 C.F.R. § 4.118.
Under the post-August 2018 rating criteria, a 10 percent rating is assigned when there are characteristic lesions involving at least 5 percent, but less than 20 percent, of the entire body affected; or at least 5 percent, but less than 20 percent, of exposed areas affected; or intermittent systemic therapy including, but not limited to, corticosteroids, phototherapy retinoids, biologics, photochemotherapy, psoralen with long-wave ultraviolet-A light (PUVA) or other immunosuppressive drugs required for a total duration of less than 6 weeks over the past 12-month period. A 30 percent rating is assigned for characteristic lesions involving 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected; or systemic therapy including, but not limited to, corticosteroids, phototherapy retinoids, biologics, photochemotherapy, PUVA or other immunosuppressive drugs required for a total duration of 6 weeks or more, but not constantly, over the past 12-month period. A 60 percent rating is assigned for characteristic lesions involving more than 40 percent of the entire body or more than 40 percent of exposed areas affected; or, constant or near-constant systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs required over the past 12-month period. 38 C.F.R. § 4.118.
In Johnson v. Shulkin, the Federal Circuit distinguished between systemic therapy versus topical therapy, holding that systemic therapy means treatment affecting the whole body, whereas topical therapy means treatment pertaining to a particular surface area that affects only the area to which it is applied. 862 F.3d 1351 (Fed. Cir. 2017).
The VA treatment records for the applicable period on appeal reflect that the Veteran was treated for a hyperpigmented rash on his hands and neck in January 2014. The physician noted his history of atopic dermatitis and directed the Veteran to use a topical corticosteroid on the affected areas 3 times a day. He was referred to dermatology. During a dermatology consultation the next day, the Veteran indicated that his rashes had been getting worse over the previous year. He complained of severe itching of the eyelid areas, elbows, knee creases, and hands. The dermatologist found evidence of atopic dermatitis on the Veteran’s periocular areas, trunk, antecubital and popliteal spaces, and hands. In addition to topical corticosteroids, the Veteran was prescribed an antihistamine to be taken “as needed” to relieve itch. 
In September 2014, the Veteran’s rash was noted as “not well controlled with steroids” and he was continued on antihistamines and topical corticosteroids. In January 2015, the Veteran’s atopic dermatitis was indicated to be “limited to few areas of the body.” He discussed other treatment options, including phototherapy and systemic immunosuppressants. 
The Veteran was afforded a VA skin examination in June 2016. At that time, the Veteran reported that his skin condition had worsened since his previous examination in July 2013. The Veteran described his dermatitis as dry, itching, and constant. Although his medication regimen occasionally lessens the dermatitis, it remains constantly present. His problem areas include the bilateral antecubital fossa, bilateral popliteal fossa, hands, back, bilateral axilla, and bilateral eyelids. He reported using topical corticosteroids as needed and taking Claritin daily. The examiner noted that the Veteran was taking antihistamines, using topical corticosteroids, and chlorhexidine gluconate liquid for 6 weeks or more, but not constantly. On examination, the examiner estimated that the Veteran’s skin condition affected 20 to 40 percent of the exposed body area. 
During VA treatment in October 2016, the Veteran reported that he had a flare involving his hands and feet. The dermatologist discussed different options with the Veteran, including systemic medications. The Veteran declined these options and was directed to continue his oral antihistamines. In January 2017, the Veteran’s atopic dermatitis was described as “stable” and he was using topical and oral medications in addition to UVB light therapy, 3 times a week for 5 minutes. In March 2018, the Veteran’s atopic dermatitis was described as severe and was noted on his head, neck, chest, abdomen, back, right and left upper extremities, buttocks, feet, and hands. He was directed to continue using a topical corticosteroid “daily all over” the affected areas, a sauna suit for 2 to 3 hours per day, and an additional cream for his lower legs as needed. He was also notified that he could restart light therapy treatment 3 times a week for 2 minutes. 
Based on the above, and affording the Veteran the benefit of the doubt, the Board finds that a 30 percent disability rating is warranted for the Veteran’s service-connected atopic dermatitis for the entire period on appeal. The evidence reflects that it is at least as likely as not that 20 percent of the Veteran’s exposed areas has been affected by the atopic dermatitis for the entire appeal period. In this respect, the Board finds the Veteran both competent and credible to comment on the extent of his rashes. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). It is particularly probative that he reported increasing severity of the rashes for the previous year during treatment in January 2014, when he was noted to have rashes on his hands and face. In reaching this determination, the Board has applied both the pre-August 2018, and post-August 2018 rating criteria to the facts of the case and finds the result is the same. 
However, based on the available evidence of record, the Board finds that a rating in excess of 30 percent is not warranted at any time during the appeal period. In this regard, there is simply no clinical evidence of record demonstrating that the Veteran’s atopic dermatitis covered more than 40 percent of the entire body or more than 40 percent of exposed areas affected. Nor is there any evidence that the Veteran has been prescribed or required to use constant or near-constant systemic therapy such as corticosteroids or other immunosuppressive drugs during the previous 12-month period. With respect to the post-August 2018 criteria, the evidence also does not reflect characteristic lesions involving more than 40 percent of the entire body or more than 40 percent of exposed areas affected; or constant or near-constant systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs over the past 12-month period. In this regard, although the Veteran has been prescribed certain topical corticosteroids and antihistamines, which he has been instructed to take on an oral basis, for his symptoms, there is no evidence suggesting that these treatments are “systemic” in nature. Indeed, the topical corticosteroids are to be used on the affected areas “as needed” with no indication that there are effects on other parts of the body. Similar findings are made with respect to the Veteran’s antihistamine use. There is no evidence that such medication affects the body as a whole; rather, it has improved itch related to his rashes. There is also no indication the Veteran’s skin disability requires constant or near-constant systematic therapy such as corticosteroids or other immunosuppressive drugs. It is found highly probative that such options were discussed with the Veteran at various dermatology appointments but the Veteran regularly declined. 
The Board acknowledges the Veteran’s contentions that his use of UVB light therapy warrants a 60 percent rating for atopic dermatitis under the revised criteria. However, as noted by the Veteran’s representative, use of light therapy was limited to 3 times a week for minutes at a time for limited durations. Such does not rise to the level of “constant” or “near constant” use over the prior 12-month period as required under the prior and revised criteria. Additionally, the Veteran’s representative argues that his use of Prednisone (an oral corticosteroid) warrants a 60 percent disability rating. However, the records are not clear as to whether the Veteran has ever actually taken Prednisone. Further, the prescribed dosage indicates that he would take the medication for 10 days total and then stop. Accordingly, even if the Veteran has been treated with Prednisone, such treatment is not considered constant or near-constant. 
In summary, the Board finds that a rating in excess of 30 percent for the Veteran’s service-connected atopic dermatitis is not warranted for the entire appeal period under Diagnostic Code 7806 under either the pre-August 2018 or the post-August 2018 rating criteria. See 38 C.F.R. § 4.118, Diagnostic Code 7806 (2017 and August 13, 2018).
 
CAROLINE B. FLEMING
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Lindsey Connor