﻿Citation Nr: AXXXXXXXX
Decision Date: 09/26/19 Archive Date: 09/26/19

DOCKET NO. 190412-8958
DATE: September 26, 2019

ORDER

Entitlement to service connection for posttraumatic stress disorder (PTSD) is denied.

Entitlement to a compensable rating for pseudofolliculitis barbae (PFB) is denied.

FINDINGS OF FACT

1. The Veteran does not have a current diagnosis of PTSD and has not described an in-service stressor.

2. Throughout the appeal period, the Veteran’s PFB affected less than 5 percent of the entire body, less than 5 percent of the exposed area affected, and no medical treatment for the condition was noted. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for posttraumatic stress disorder have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

2. The criteria for entitlement to a compensable rating for PFB have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.7, 4.118, Diagnostic Code 7806 (pre- and post-August 2018 criteria).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service in the Air Force from January 1974 to December 1977.

These matters come before the Board of Veterans’ Appeals (Board) on appeal from a March 2019 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO).

1. Entitlement to service connection for posttraumatic stress disorder (PTSD).

Generally, in order to prove service connection, a veteran must show: (1) a present disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service, the so-called “nexus” requirement. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection for PTSD requires medical evidence establishing a diagnosis of the disability in accordance with the DSM-V for claims on or after August 4, 2014, a link, established by medical evidence, between the current symptoms and the claimed in-service stressor, and credible supporting evidence that the claimed in-service stressor actually occurred. See 38 C.F.R. § 3.304(f), 4.125(a).

Regarding the first element to establish PTSD, the record does not show a diagnosis of PTSD or any other acquired psychiatric condition.

Regarding the second element to establish PTSD, the Veteran has not described an in-service stressor. On February 6, 2019, the RO sent correspondence to the Veteran requesting that he provide “specific details of the stressful incident(s) in service that resulted in PTSD.” The correspondence included VA Form 21-0781a, Statement in Support of Claim for Service Connection for Post-Traumatic Stress Disorder Secondary to Personal Assault and VA Form 0781, Statement in Support of Claim for Service Connection for PTSD. On March 3, 2019, the Veteran submitted VA Form 21-0781. The only information provided on the form was “South Korea” as the location of the incident and “flight line” as the assigment during the incident. No details of any specific incident or circumstances were provided. 

In disability compensation claims, the Secretary must provide a VA medical opinion when (1) there is competent lay or medical evidence of a current diagnosed disability or persistent or recurrent symptoms of a disability (2) the evidence establishes that the veteran suffered an event, injury, or disease in service… and (3) evidence indicates that the claimed disability or symptoms may be associated with the established event, injury, or disease in service or with another service-connected disability. 38 C.F.R. § 3.159(c)(4). In this case, the Veteran has not provided any lay or medical evidence of a current diagnosis of PTSD. Furthermore, he has provided no evidence of any specific in-service stressor. Given the absence of competent evidence indicating that the Veteran has a current disability, no VA examination is required. See McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006).

The record does not show a current diagnosis of PTSD or any acquired psychiatric disorder and the Veteran has not provided a description of an in-service stressor. As such, the claim for entitlement to service-connection for PTSD must be denied.

2. Entitlement to a compensable rating for pseudofolliculitis barbae (PFB) from July 19, 2018 to March 16, 2019.

Disability evaluations are determined by the application of the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321, 4.1.

During the appeal period, VA published a final rule amending its regulations on skin disabilities effective August 13, 2018. The amendment, in pertinent part, added a General Rating Formula for the Skin for diagnostic codes 7806, 7809, 7813-7816, 7820-7822, and 7824, and amended diagnostic codes 7801, 7802, 7817, 7819, 7825, 7826, 7827, 7829. See 83 Fed. Reg. 32,592 (July 13, 2018). Claims pending prior to the effective date are to be considered under both old and new rating criteria, and whichever criteria is more favorable to the Veteran will be applied.

Under the regulations in effect at the time the Veteran filed his claim (FDC form submitted July 19, 2018), Diagnostic Code 7806 provided the following: a 10 percent evaluation is warranted if the skin condition covers at least 5 percent, but less than 20 percent, of the entire body, or at least 5 percent, but less than 20 percent, of exposed areas affected, or; when intermittent systemic therapy such as corticosteroids or other immunosuppressive drugs are required for a total duration of less than six weeks during the past 12-month period. A 30 percent evaluation is warranted if the skin condition covers 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected, or; when systemic therapy such as corticosteroids or other immunosuppressive drugs are required for a total duration of six weeks or more, but not constantly, during the past 12-month period. 38 C.F.R. § 4.118, DC 7806 (2008).

Under the new regulations, effective August 2018, Diagnostic Code 7806 is to be rated under a General Rating Formula for Skin, under which a 10 percent rating will be assigned if the disability meets at least one of the following: (i) characteristic lesions involving at least 5 percent, but less than 20 percent, of the entire body; or (ii) at least 5 percent, but less than 20 percent, of exposed areas affected; or (iii) intermittent systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs required for a total duration of less than 6 weeks over the past 12-month period. A 30 percent rating will be assigned if the disability meets at least one of the following: (i) characteristic lesions involving 20 to 40 percent of the entire body or 20 to 40 percent of exposed areas affected; or (ii) systemic therapy including, but not limited to, corticosteroids, phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs required for a total duration of 6 weeks or more, but not constantly, over the past 12-month period. 38 C.F.R. § 4.118, DC 7806 (2018). 

The Federal Circuit addressed the meaning of “systemic” and “topical” for rating skin disabilities under the regulatory criteria prior to August 31, 2018. See Johnson v. Shulkin, 862 F.3d 1351 (Fed. Cir. 2017). For these purposes, systemic therapy means treatment pertaining to or affecting the body as a whole, whereas topical therapy means treatment pertaining to a particular surface area, as a topical anti-infective applied to a certain area of the skin and affecting only the area to which it is applied. Id. at 1355. The Federal Circuit acknowledged that a topical corticosteroid treatment could meet the definition of systemic therapy if it was administered on a large enough scale such that is affected the body as a whole, but the Court emphasized that this possibility does not mean that all applications of topical corticosteroids amount to systemic therapy. Id. Rather, the use of a topical corticosteroid could be considered either systemic therapy or topical therapy based on the facts of each case. Id. at 1356.

Effective August 31, 2018, VA regulations explicitly state that for the purposes of the skin disability ratings, “systemic therapy is treatment that is administered through any route other than the skin, and topical therapy is treatment that is administered through the skin.” 38 C.F.R. § 4.118(a)(2018). 

The Veteran was provided with VA examinations for his PFB in August 2018 and February 2019. During the August 2018 examination, the examiner indicated that the condition affected less than 5 percent of total body area and less than 5 percent of exposed body area. No corticosteroids or other immunosuppressive drugs were required in treatment. In addition, no treatment of phototherapy, retinoids, biologics, photochemotherapy, PUVA, or other immunosuppressive drugs was noted. Regular use of a shaving powder was noted. 

The February 2019 examination provided virtually identical information as the August 2018 examination. The only significant difference was that the August 2018 examiner noted “TNTC scars 10cm2.” The February 2019 examiner reported that no scars were visible at the time of examination but noted “residual hyper pigmented areas as well as ingrown hairs and shaving bumps.”

To establish entitlement to a compensable rating of 10 percent, both the earlier and most recent regulations require consideration of whether at least 5 percent of the entire body or at least 5 percent of the exposed area is affected. Both examinations from the time period on appeal note that the condition covers less than 5 percent of the entire body and less than 5 percent of the exposed area affected. None of the listed medical treatments under the old or new regulations, or any similar treatments, are noted. 

Overall, the evidence of record supports a noncompensable rating of zero percent and not higher, during the time period on appeal. The Veteran’s PFB condition falls below the threshold for a compensable rating under both the pre- and post-August 2018 rating criteria. As such, entitlement to an initial compensable rating for PFB, from July 19, 2018, is denied. 

 

Bethany L. Buck

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Jack, Law Clerk

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.